No. 13684

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

ROBERT R. ZIMMERMAN,

Defendant and Appellant.

Appeal from: District Court of the Fourth Judicial District, Honorable Jack L. Green, Judge presiding.

Counsel of Record:

For Appellant:

Edward A. Cummings argued, Missoula, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Robert Deschamps III, argued, County Attorney,
Missoula, Montana

Submitted: September 14, 1977

Decided: DEC 29 1977

Filed:

*Thomas J. Kearney*
Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

This is an appeal by defendant from his conviction of 22 counts of embezzlement following a jury trial in the District Court, Missoula County.

Defendant, a former psychology professor at the University of Montana, was in charge of a research project involving the effects of malnutrition in monkeys. This project was funded by various research grants from the federal government (through the Department of Health, Education and Welfare) and from private sources (through Nutrition Foundation, Inc., a nongovernmental entity).

These grant funds were physically commingled with other moneys of the University of Montana in its "local pool of funds" on deposit in several banks in the Missoula area. Separate bookkeeping entries were kept on each grant by the University so that a purchase made under a certain grant would be charged against the funds available in that particular grant on the University's books, but payment would be made to the creditor by University check drawn on its "local pool of funds". Any money remaining in a particular grant account on the University's books at the termination of that particular project would be returned to the grantor.

Defendant allegedly embezzled funds from the Department of Health, Education and Welfare and from the Nutrition Foundation by means of false claims charging against their respective grant accounts various purchases intended for defendant's personal use.

For a prior history of this case and a pretrial opinion of this Court, see State ex rel. Zimmerman v. Dist. Court (1975), 168 Mont. 289, 541 P.2d 1215.

On November 30, 1973, an indictment was filed in United States District Court accusing defendant of 16 counts of using documents containing a false statement in connection with charges against HEW research grants. The alleged crimes were in violation

of 18 U.S.C., Sec. 1001 and covered the period between September 18, 1970 and October 20, 1972.

Thereafter on December 13, 1972 defendant was charged with 36 counts of embezzlement by Information filed in the District Court of Missoula County. These alleged crimes covered the period from September 16, 1969 to December 29, 1972 and charged violation of state law, former section 94-1501, R.C.M. 1947. In substance, these charges accused defendant of appropriating public moneys to his own use by means of claims against Nutrition Fund grants covering items intended for his personal use.

Subsequently defendant plead guilty to one of the federal counts and the remaining counts were dismissed. The federal court sentenced defendant to 3 years imprisonment, suspending 2 years and 305 days thereof on the condition that defendant be imprisoned for 60 days and contribute 40 hours per month to public service.

Thereafter defendant filed a motion in state court seeking dismissal of the state charges on the grounds, among other things, that the state prosecution was barred by section 95-1711. Following denial by the District Court, Missoula County, defendant sought review of the District Court's ruling by writ of supervisory control. We accepted jurisdiction and denied petitioner's application on the merits. State ex rel. Zimmerman v. District Court, supra.

Defendant was then tried by jury in state court and convicted of 22 counts of embezzlement. He was sentenced to 10 years imprisonment on each count to be served concurrently with all but approximately 9 months suspended. Defendant appeals from this condition.

Two issues are presented for review on appeal:

(1) Was the admission of testimony that defendant appeared intoxicated on amphetamines reversible error?

(2)   Did the federal conviction bar the state prosecution?

As part of its case-in-chief, the state called Dr. James A. Walsh, chairman of the psychology department of the University. During his direct examination by the county attorney, Dr. Walsh testified that during September, October and early November, 1972, he observed defendant in the psychology building at the University " * * * behaving in such a way that I believe that he was intoxicated on amphetamines". This testimony was admitted over the strenuous and protracted objections of defense counsel.

On appeal the state contends this evidence was properly admitted as part of the state's proof that public moneys were appropriated by defendant to his own use and not for his research projects, an element of the crimes charged. Defendant contends the admission of this testimony is reversible error because it is simply evidence of a past, remote and unrelated issue without probative value and highly prejudicial.

This issue concerns counts III through XI of the Information. These counts in substance charge defendant with unlawfully appropriating public money to his own use by causing payment to be made on various University claims covering items intended for his own use. The nine counts cover drug purchases (amphetamines and tranquilizers) totalling $407 between March 25, 1970 and December 15, 1971.

We note that the evidence in question is somewhat remote. The behavior of defendant which Dr. Walsh witnessed occurred in the fall, 1972. The state's proof indicated the last purchase of amphetamines was either March 23, 1971 (state's exhibit 10) or April 7, 1971 (state's exhibit 37). The probative value of an observation 18 months after the last purchase of amphetamines in proving that the items were purchased for defendant's own use is open to question.

We further note that the evidence, at best, is simply

-4-

cumulative. The state called Dr. Charles R. Geist, a research assistant to defendant, who testified:

"Q. (By county attorney) Let's examine the Nutrition Foundation grant particularly. Previous to 1973, were you using amphetamines in the Nutrition Foundation research? A. No."

This is direct and uncontradicted proof that the amphetamines covered by claims submitted by defendant were not purchased for use in the research project. It also supports the conclusion that they were intended for defendant's own use. The evidence further indicated that defendant reimbursed the University for these and other items to the tune of $11,762.92. Without detailing each other specific instance of proof, we can fairly state that the evidence at the trial permits the single conclusion that the amphetamines were intended for defendant's own use without resort to the challenged testimony of Dr. Clark.

The prejudicial effect of the challenged testimony requires little comment. A University professor allegedly intoxicated on amphetamines in a college building on the campus of a state university obviously raises deep emotions and prejudice against him by reason of an alleged collateral crime with which he was not charged. In such a case the probative value, if any, of the challenged testimony to prove the crime charged must be weighed against its unfair prejudice in determining the admissibility of the challenged evidence.

Montana has applied this approach in a number of cases. In State v. Rollins (1967), 149 Mont. 481, 428 P.2d 462, we said:

" * * * In passing on the admissibility of such evidence, (gruesome color photographs of the victim's wounds), the court should weigh its probative value against its prejudicial effect."

Other Montana cases applying this rule are State v.Bischert (1957), 131 Mont. 608, 308 P.2d 973; State v. Frates (1972), 160 Mont. 431, 503 P.2d 47; State v. Skinner (1973), 163 Mont. 58, 515 P.2d 81.

The new Montana Rules of Evidence, although not applicable to this case tried before their effective date, contains the same rule:

> "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."
> Rule 403, M.R.Ev.

The Commission Comment to this rule indicates no intention to change existing Montana law.

The probative value, if any, of the challenged testimony is clearly outweighed by its unfair prejudice. The challenged testimony at best is remote, cumulative, and tends to confuse the issues the jury is to decide by proof of an alleged collateral crime with which defendant was not charged. The challenged testimony of Dr. Clark should have been excluded and failure to do so was an abuse of discretion constituting reversible error.

Since this conviction must be reversed and the case remanded, discussion of the second issue is in order.

In 1975 this Court in a 3-2 decision held on a writ of supervisory control that the prior federal conviction did not bar state prosecution in this case. State ex rel. Zimmerman v. Dist. Ct., supra. The basis of the majority decision was that the federal and state prosecutions were not based on the "same transaction" but were separate "offenses" and that the requisite concurrent jurisdiction of state and federal courts to bar the subsequent state prosecution under section 95-1711, R.C.M. 1947, was lacking.

All members of this Court are convinced that this former decision is fundamentally wrong and constitutes manifest error.

The state argues in this appeal that the former decision is res judicata and further consideration is foreclosed. Defendant

contends that the evidence at the trial differed from the representations made to this Court in the previous decision and goes on to argue the merits of this issue as if it were an original matter.

Without splitting definitional hairs to determine whether res judicata or law of the case principles are involved, we will refer to the principle as law of the case. Irrespective of its label, the gist of the principle espoused by the state is that the issue has been once finally decided and cannot again be litigated.

Prior Montana cases disclose the general rule that where a decision has been rendered by the Supreme Court on a particular issue between the same parties in the same case, whether that decision is right or wrong, such decision is binding on the parties and the courts and cannot be relitigated in a subsequent appeal. Carlson v. Northern Pac. Ry. Co. (1929), 86 Mont. 78, 281 P. 913; Libin v. Huffine (1950), 124 Mont. 361, 224 P.2d 144; Little v. Little (1953), 127 Mont. 152, 259 P.2d 383; G. N. Ry. Co. v. State Bd. of Eq. (1952), 126 Mont. 187, 246 P.2d 20. This general rule extends back to territorial days. Creighton v. Hershfield (1874), 2 Mont. 169; Barkley v. Tieleke, (1876) 2 Mont. 433. Also see 1 A.L.R. 1033 and 8 A.L.R. 1267 for varying decisions in other jurisdictions on whether an erroneous decision is the law of the case on a subsequent appeal.

In any event an exception to this general rule exists where the case must be remanded to the District Court for further proceedings because of reversal on an unrelated issue. In such case this Court may correct a manifest error in its former opinion and announce a different ruling to be applied prospectively to future proceedings in the case. This exception to the general rule is recognized in Montana at least since 1955 when we held that the law of the case announced in the first appeal, and which governed the second trial, does not prevent the appellate court

from correcting a manifest error in its former opinion to apply to future proceedings where doing so promised justice without substantial injury to anyone. State v. Hale (1955), 129 Mont. 449, 291 P.2d 229. Such exceptions are more readily applied where, as here, the prior decision is by a divided court. Perkins v. Kramer (1948), 121 Mont. 595, 198 P.2d 475.

For criticism of our former majority opinion, see Survey of Montana Law, Part I, Criminal Procedure, Vol. 38, No. 1, Montana Law Review, wherein Professor Elison uses this language:

> "In State ex rel. Zimmerman v. District Court, the court allowed a second prosecution in state court after the defendant had been tried, convicted, and sentenced on virtually the same facts and for the same criminal episode in federal court. The applicable statute provides:
>
> > "'When conduct constitutes an offense within the concurrent jurisdiction of this state and of the United States or another state or of two courts of separate and/or concurrent jurisdiction in this state, a prosecution in any such other jurisdiction is a bar to a subsequent prosecution in this state under the following circumstances:
> >
> > > "'(a) The first prosecution resulted in an acquittal or in a conviction as defined in subsection (3) and the subsequent prosecution is based on an offense arising out of the same transaction.'
>
> "It is difficult to imagine a case fitting more completely within both the language and purpose of the statute. As noted by the dissent, there was a single research project, a single fund, a single purpose or plan, and a series of the same acts. Any factual differences were at most technical, legal distinctions. Nonetheless, the majority restated the position taken in an earlier case: 'A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.'
>
> "This statement is not applicable, however, to Montana's double jeopardy statute. It misconstrues the express statutory language. It renders the phrase 'same transaction' meaningless. First, the court struggled to find that the offenses involved were different transactions, by deciding that the money taken belonged to two different funds --

Nutrition Fund, Inc. and HEW grant money --
even though the money was co-mingled. The court
found there was a different offense because proof
of a different fact was required. Then, it moved
gracelessly from 'different offense' to 'different
transaction'. This narrow, technical misapplication
of Montana's double jeopardy statute is unfortunate,
and in the long run is injurious to the criminal
justice system. Further, its effect on this
defendant is distressing. The defendant was
again tried, again convicted, and given a severe
sentence in state court for the crime. Society's
interest had been vindicated by the earlier trial
and the defendant was on a course which would
assure early reentry into a productive, socially
valuable life. This course was interrupted by
the lengthy, expensive state court process to the
value and credit of no one."

Additionally, defendant's conduct constituted an offense within the concurrent jurisdiction of the United States and Montana raising the bar against subsequent state prosecution under section 95-1711. This concurrent jurisdiction does not arise from the unproven claim that the research projects were carried on in a building allegedly located on a federal reservation as indicated in our former majority opinion.

Concurrent jurisdiction arises because defendant's conduct constituted embezzlement under both federal law (18 U.S.C. Sec. 641) and state law (section 94-1501, R.C.M. 1947). The fact that federal authorities chose to prosecute and convict him for making false statements to secure the funds (18 U.S.C., Sec. 1001) rather than for appropriating the funds to his own use (embezzlement) does not destroy the required concurrent jurisdiction. The measure of concurrent jurisdiction is whether defendant's conduct subjected him to prosecution in both jurisdictions.

The state prosecution is based on offenses arising out of the same transaction as the federal prosecution and therefore barred under section 95-1711 (4) (a), R.C.M. 1947. The "same transaction" as the term is used therein means conduct consisting of "a series of acts * * * motivated by a common purpose or plan and which result in the repeated commission of the same offense or

affect the same person * * * or the property thereof." Section 95-1711 (1) (a) (ii), R.C.M. 1947. The prior federal conviction is based on the same transaction as the state prosecution under this definition. All 36 charges in state court are based on a series of acts by the defendant (submitting false claims) motivated by a common purpose or plan (securing research funds for his personal use) resulting in the repeated commission of the same offense (embezzlement). His conduct also affected the same person or entity (the University of Montana) and its property (its local pool of funds).

There is but one research project, one fund, a single purpose or plan, a series of the same acts, and the repeated commission of the same offense against the same institution. The initial source of the grants, the internal accounting and bookkeeping procedures of the University, and technical legal distinctions between the charges filed in the two courts cannot alter these basic facts. Section 95-1711 fits this case like a glove and bars the subsequent state prosecution after the initial federal conviction.

This rule herein announced shall be applied prospectively to further proceedings in this case and not retrospectively to past proceedings under authority of State v. Hale, supra.

Defendant's conviction is vacated and the cause remanded to the District Court for further proceedings in conformity with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

- 10 -