DA 08-0538

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 291

IN THE MATTER OF THE ESTATE OF
LUCILE B. SNYDER,

     Deceased.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. BDP-1992-279
Honorable Laurie McKinnon, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

    Steven T. Potts, Thompson, Potts & Donovan, P.C., Great Falls, Montana

    For Appellee:

    Robert J. Emmons, Attorney at Law, Great Falls, Montana

Submitted on Briefs: July 29, 2009

Decided: September 1, 2009

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1     We are again presented with the will of Lucile B. Snyder, who died November 18, 1992, devising her entire estate to her two children, Neil and Lois. On November 25, 1992, the District Court admitted Lucile's will to probate, and Neil was appointed the personal representative. Neil and Lois have disagreed from the outset as to the proper distribution of Lucile's estate—in particular, Lucile's shares in the family-owned drugstore (Synder's, Inc.) in Great Falls, and 40 acres of undeveloped land in Flathead County—and over the last 16 years, they have engaged in "acrimonious" (to quote Lois) litigation in the Eighth Judicial District Court, Cascade County, concerning the construction of Lucile's will.

¶2     In *In re Estate of Snyder*, 2000 MT 113, 299 Mont. 421, 2 P.3d 238 (*Snyder I*), we addressed the distribution of Lucile's shares in Snyder's, Inc. We noted Lucile's intent to give Neil ownership or control of Snyder Drug while dividing her estate equally between him and Lois. *Snyder I*, ¶ 15. We thus concluded that Neil was to take Lucile's entire interest in the store and Lois was to receive estate assets of comparable value. *Snyder I*, ¶¶ 16-17.

¶3     In *In re Estate of Snyder*, 2007 MT 146, 337 Mont. 449, 162 P.3d 87 (*Snyder II*), we addressed the issue of whether the property still remaining in the estate should be appraised and distributed based upon its value at Lucile's death or its current market value. The District Court had adopted the latter approach; however, we determined that Lucile intended to have the estate distributed pursuant to its value at her death, and we accordingly reversed the District Court on this issue. *Snyder II*, ¶¶ 35-37. We also

2

reversed the court's order compelling Lois to quitclaim her interest in the Flathead County property back to Lucile's estate. *Snyder II*, ¶¶ 41-42. The District Court had reasoned that Lois's successful appeal in *Snyder I* "upset the entire scheme of distribution" adopted by the court in January 1998 and that the court needed "the flexibility to order distribution of [the Flathead County] property . . . by partition, in kind distribution[,] or sale and distribution of proceeds" in order to probate the estate pursuant to *Snyder I*. *See Snyder II*, ¶ 17; *see also Snyder I*, ¶ 7. The District Court had also opined that "[i]t is highly unlikely that Lois will receive the exact interest in the Flathead property that presently stands in her name." *See Snyder II*, ¶ 17. But we concluded that under the circumstances, including the fact that Lois was unlikely to receive less than one half of Lucile's estate, the District Court's approach simply added an unnecessary step in the court's resolution of the estate. *Snyder II*, ¶ 41.

¶4 On remand, the District Court conducted an evidentiary hearing on all outstanding issues in the case and thereafter entered findings of fact and conclusions of law. The court determined as follows. First, the date-of-death value of the Snyder's, Inc. shares (which were distributed to Neil in accordance with *Snyder I*) is $187,440.00. Neil has deposited $187,440.00 in an escrow account with the Cascade County Clerk of Court. "[P]ayment with assets outside of the Estate in order to balance distribution is not inconsistent with Lucile's intent to provide equally for her children." Thus, the parties are on "an equal footing or starting point for distribution of the residuary estate." Second, the date-of-death value of the Flathead County property was $160,000.00, but its present value is "at least" $5 million. To distribute the Flathead County property entirely

3

to Lois "would create a significant inequity which Lucile expressed several times she desired to avoid." Because Lucile intended to have her estate distributed pursuant to its value at her death, *Snyder II* precludes the application of § 72-3-902(2)(b), MCA (any homestead or family allowance or devise of a stated sum of money may be satisfied in kind, provided that the property distributed in kind is valued at fair market value as of the date of its distribution, "[u]nless a contrary intention is indicated by the will"). However, "this does not preclude a distribution of the Flathead County property to both parties as tenants in common." Thus, Lucile's desire to have her estate distributed equally between Lois and Neil "requires that both Lois and Neil take equally the Flathead County property and that same be held jointly by Lois and Neil, as tenants in common." Lastly, the remainder of the residuary estate, consisting primarily of financial accounts, may be divided equally between Lois and Neil.

¶5 The District Court accordingly ordered that Neil pay Lois $187,440.00 and that the Flathead County property be held "equally" by Lois and Neil "as tenants in common." The court further ordered Neil and Lois to execute any deeds necessary to comply with its order. The court subsequently issued a Nunc Pro Tunc Order correcting the amount of Neil's payment to Lois for the Snyder's, Inc. shares to $187,488.00. Lois now appeals, arguing that the District Court's order violates the terms of Lucile's will and the law of the case established in *Snyder I* and *Snyder II*. Lois also challenges the District Court's observation that the Flathead County property is worth "at least" $5 million.

¶6 The law-of-the-case doctrine is based on policies of judicial economy and finality of judgments. Under this doctrine, a prior decision of this Court resolving an issue

4

between the same parties is binding and may not be relitigated. *Muri v. Frank,* 2003 MT 316, ¶ 11, 318 Mont. 269, 80 P.3d 77. Lois argues that the District Court was required to follow the law as stated in *Snyder I* and *Snyder II*, and Neil presents no argument to the contrary (i.e., that the law-of-the-case doctrine does not apply to the District Court's decision now under review, or that an exception to the doctrine should apply).

¶7 As noted, this Court held in *Snyder I* that Neil was to take Lucile's entire interest in Snyder Drug and Lois was to receive *estate assets* of comparable value. *Snyder I,* ¶¶ 16-17; *accord Snyder II,* ¶ 10. Clearly, a cash payment by Neil of $187,488.00 (the date-of-death value of the Snyder's, Inc. stock) does not constitute an "estate asset." Furthermore, this Court held in *Snyder II* that the property in Lucile's estate is to be appraised and distributed based upon its value *at her death*. Thus, the question of whether distributing the Flathead County property entirely to Lois would create "a significant inequity" because it is now worth substantially more than it was worth 16 years ago when Lucile died is not a proper consideration here. For that matter, it must be acknowledged that the supposed inequity exists not by virtue of the terms of Lucile's will itself, but because the values of her assets have changed while the two beneficiaries, Neil and Lois, have persisted in protracted and acrimonious litigation for the last 16 years over who is entitled to which asset. Had the estate simply been distributed in a timely manner, *see* § 72-3-1015, MCA (an estate should generally be closed within two years from the date of appointment of the personal representative), and at date-of-death values, *see* § 72-3-607(1), MCA (requiring the decedent's property to be valued "as of the date of the decedent's death"), no such "inequity" would exist. That, however, is water over the

5

dam. The fact is that at this point, Neil does not dispute that the law of the case established in *Snyder I* and *Snyder II* controls the distribution of Lucile's estate.

¶8 Under the law of the case established in *Snyder I* and *Snyder II*, Neil received all of the shares of Snyder's, Inc., which were valued at $187,488.00 (date-of-death value). Lois was entitled to *estate assets* equaling $187,488.00, with any remaining estate assets being divided equally. The date-of-death value of the Flathead County property was $160,000.00. Accordingly, Lois is entitled to receive this property, at that date-of-death value, plus additional estate assets totaling $27,488.00 (likewise valued at the date of Lucile's death), unless there are insufficient estate assets remaining to be distributed, in which case Lois is entitled to a cash payment from Neil for the balance (i.e., for the portion of the $27,488.00 that cannot be satisfied with estate assets).

¶9 The Dissent takes issue with our holding in *Snyder II* and argues that we should not apply the law-of-the-case doctrine here but, rather, should "overturn" *Snyder II.* Dissent, ¶¶ 14, 18. Neil, however, has effectively conceded that *Snyder II* is controlling by failing to respond, with argument and citations to authority, to Lois's argument in her opening brief that the District Court violated the law of the case. *See Harland v. Anderson Ranch Co.*, 2004 MT 132, ¶ 33, 321 Mont. 338, 92 P.3d 1160 (Under M. R. App. P. 12(2), an appellee's brief "must contain a succinct, clear and accurate summary of the arguments posited by the party, followed by a well reasoned argument containing citations to the authorities, statutes, and pages of the record relied upon.").

¶10 The Dissent further contends that distributing the Flathead Lake property at its date-of-death value would be "unconscionable." Dissent, ¶ 15. Yet, the Dissent

6

apparently would affirm the District Court's decision allowing Neil to pay Lois the *date-of-death* value of the Snyder's, Inc. stock distributed to Neil ($187,488.00), even though the stock's value had appreciated to roughly $715,554.00 by December 2007. Applying a date-of-death value to the Snyder's, Inc. stock but a present-day value to the Flathead County property is not only internally inconsistent, but also contrary to the statutory requirement that a decedent's property be valued "as of the date of the decedent's death." *See* § 72-3-607(1), MCA; *see also e.g.* § 72-3-609, MCA ("If any property not included in the original inventory comes to the knowledge of a personal representative or if the personal representative learns that the value or description indicated in the original inventory for any item is erroneous or misleading, the personal representative shall make a supplemental inventory or appraisal showing the market value *as of the date of the decedent's death* of the new item or the revised market value or descriptions and the appraisers or other data relied upon, if any." (emphasis added)).

¶11    The disposition set forth above in ¶ 8 is the only distribution that follows the law of the case established in *Snyder I* and in *Snyder II*. While, at present values, this distribution may seem inequitable to Neil, to the trial court, and to the Dissent, our decisions in *Snyder I* and in *Snyder II* require this outcome. *Muir*, ¶ 11.

¶12    Reversed and remanded for further proceedings consistent with this Opinion.


/S/ JAMES C. NELSON

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS
/S/ JIM RICE

Justice Patricia O. Cotter dissents.

¶13 I dissent. It is my view that the District Court, in each instance in which it had to evaluate and reevaluate the distribution of this estate, got it right and, in each instance in which this Court evaluated the District Court's decisions, we got it wrong. I would affirm the District Court Order presently on appeal in all respects.

¶14 First, Lucile's will did *not* reflect an intent that her estate be distributed pursuant to its value at her death as calculated for federal estate tax purposes, our decision in *Snyder II* notwithstanding. Her intention to value the estate pursuant to federal and state tax applied only in the event that Snyder's, Inc. was unincorporated at the time of her death, a happenstance that did not occur. The District Court reached the correct decision in this regard; however, we erroneously reversed that decision in *Snyder II*. In so doing, we disregarded the clear meaning of the language of her will, and the provisions of § 72-3-902(2)(b), MCA, which requires that unless a contrary intention is indicated by the will, the property to be distributed in kind shall be valued at the fair market value as of the date of its distribution.

¶15 In its most recent decision which we now reverse, the District Court said that to distribute the Flathead County property to Lois "would create a significant inequity,

8

which Lucile expressed several times she desired to avoid." The District Court is right. If anything is clear from Lucile's will (though I submit the will is clear on its face), it is that her children were held by her in equal regard, and that her ultimate intent was to see that her estate is equally distributed between them. In my judgment, we have ignored her intention on three occasions now. As a result, one child will receive property valued at $187,488.00, while the other will receive property arguably worth $5 million *plus* additional estate assets of $27,488.00. This is unconscionable.

¶16    I have no disagreement with the Court's general discussion of the "law of the case" doctrine. However, in my judgment, this is not a hard and fast rule when its application presents a clear error resulting in a manifest injustice. In *State v. Zimmerman*, 175 Mont. 179, 573 P.2d 174 (1977), we vacated a conviction, notwithstanding our previous and opposite decision in the same case on application for a writ of supervisory control. Granted, we did so citing an exception to the general rule of "law of the case" to the effect that, where the case must be remanded to the district court for further proceedings because of reversal on an unrelated issue, the court may take the opportunity to correct a manifest error in its former opinion. *Zimmerman*, 175 Mont. at 185, 573 P.2d at 178. While the case is not precisely on point, it does nonetheless demonstrate that the "law of the case" doctrine is not set in stone in Montana.

¶17    In *Beal v. Beal*, 209 P.3d 1012, 1016-17 (Alaska, 2009), the Alaska Supreme Court stated:

> The law of the case doctrine, which is "grounded in the principle of stare decisis" and "akin to the doctrine of res judicata" generally "prohibits the reconsideration of issues which have been adjudicated in a previous appeal

in the same case." Previous decisions on such issues—even questionable decisions—become the "law of the case" and should not be reconsidered on remand or in a subsequent appeal **except "where there exist 'exceptional circumstances' presenting a 'clear error constituting a manifest injustice.' "** [Emphasis added.]

Accord, *Mid-American Pipeline Co. v. Four-Four, Inc.*, 2009 UT 43, ¶ 14, ___ P.3d ___; *Miss. Dept. of Human Services v. McNeel*, 10 So. 3d 444, ¶ 35. *See also Brown v. State*, 953 P.2d 1170, 1174 (Wyo. 1998), in which the Supreme Court of Wyoming said: "The law of the case [doctrine] is a discretionary rule which does not constitute a limitation on the court's power but merely 'expresses the practice of courts generally to refuse to reopen what has been decided.' " I agree with this statement. The doctrine, while important, does not limit a court's power to reverse a previous decision if it is a clear error and results in a manifest injustice. I therefore respectfully disagree with the Court's conclusion here that the doctrine compels the outcome we reach. Opinion, ¶ 8.

¶18    In my view, if we are free (and it is evident from our jurisprudence that we are) to overturn previous decisions of this Court in *other* cases where justice so requires, we should be equally free and willing to do so where we have made a manifest error in a former decision in the same case. I believe we have done so in these *Snyder* cases, and I would so rule, notwithstanding the "law of the case" doctrine. I would affirm the District Court's decision and put an end to this litigation, giving effect to Lucile's intention that her children receive equal distribution of her estate. I dissent from our refusal to do so.

/S/ PATRICIA O. COTTER