JUSTICE RICE,
dissenting.
¶70 I believe the Court’s analysis is deeply flawed and evades the clear principles of our jurisprudence. This appeal has been mooted — several times over. There is simply no defensible way to reconcile the Court’s decision in this case with our contrary precedent, and I dare say that no lawyer will now be able to explain this Court’s mootness jurisprudence, except by observing that this Court will arbitrarily moot those cases it doesn’t want to decide, while reaching the merits on identically situated cases if it so desires. Ultimately, the legal standards simply do not matter.
¶71 I begin by advising the reader of our previous order in this case and then turn to mootness principles.
¶72 1. The Law of the Case
*84 ¶73 Previously, we issued an Order in response to Plains Grains’ Petition for Writ of Supervisory Control, which had requested that we order the District Court to rule on all dispositive issues of the case so Plains Grains could appeal the spot-zoning issue. We granted the Writ, and provided the following instructions in our Order:
The District Court should resolve any remaining claims in Plains Grains’ complaint and issue a final judgment. At that point. Plains Grains can decide whether to appeal and whether to seek a stay of the District Court’s final iudsment or an injunction vending appeal. Plains Grains first must file with the District Court any request for a stay or an injunction pending appeal. M.R.App.P.22(l)(a)(i) and (iii). A district court retains jurisdiction to rule on any motion for stay even after the appellant has filed a notice of appeal. M.R.App.P.22(l)(c). The district court promptly must enter a written order on a motion fíled M.R.Avp.P.22 and include findings of fact and conclusions of law, or a supporting rationale, that contains the relevant facts and legal authority on which the district court’s based its order. M.R.App.P.22(l)(d). This Court retains the authority to review any decision by the district court regarding the stay of execution of a iudsment or the denial or granting of an injunction pending appeal. M.R.App.P.22(2).
Order Granting Pet. for Writ of Supervisory Control, Plains Grains v. Eighth Jud. Dist., 5 (April 29, 2009) (OP 09-0054).
¶74 Our Order instructed Plains Grains and the District Court, in step-by-step fashion, what procedure to follow for addressing either a stay or an injunction if the matter was appealed. These instructions became the “law of this case,” which is “well established and long adhered to in this state.” Carlson v. Northern Pac. Ry. Co., 86 Mont. 78, 81, 281 P. 913, 914 (1929); Scott v. Scott, 283 Mont. 169, 175-76, 939 P.2d 998, 1001-02 (1997) (citations omitted). In the seminal Carlson decision, we held that a previous ruling by this Court “upon a point distinctly made... is a final adjudication from the consequences of which this court may not depart, nor the parties relieve themselves.” Carlson, 86 Mont. at 82, 281 P. at 914 (collecting numerous cases and authorities for this proposition). In Fiscus v. Beartooth Electric Cooperative, Inc., we further defined “law of the case” in holding that the “decision, judgment, opinion or rulings on former appeal or writ of error become ‘law of the case.’ ... The doctrine expresses practice of courts generally to refuse to reopen what has been decided.” 180 Mont. 434, 436, 591 P.2d 196, 197 (1979) (emphasis added). We have applied the law of the case to dispose of an issue addressed in a denial of an Appellant’s Application for Writ of Supervisory Control. Murphy *85 Homes, Inc. v. Muller, 2007 MT 140, ¶¶ 50-51, 56, 337 Mont. 411, 162 P.3d 106.[1] Our cases have consistently applied the law of the case doctrine[2].
¶75 Our previous Order instructed that, once the District Court had ruled on the dispositive issues of the case, “Plains Grains [could] decide whether to appeal and whether to seek a stay of the District Court’s final judgment or an injunction pending appeal.” The District Court was instructed to enter findings of fact, conclusions of law and rationale regarding Plains Grains’ request for a stay or injunction. However, Plains Grains did not follow our instructions, and the District Court entered no order addressing the stay or injunction issues. Without a stay or an injunction, Plains Grains risked having their appeal mooted for a variety of reasons and, indeed, Plains Grains’ appeal has been mooted because of the post-judgment developments discussed below.
¶76 Plains Grains makes repeated references to the District Court’s statement that “[a] stay would require a bond that would cover the prospective damages to Defendants due to delayed construction [and] such a bond could be astronomical,” as justification for their failure to even request a stay or seek an injunction. However, our Order instructing the parties on a post-appeal stay came after the District Court’s comments, effectively vacating them. Setting that aside for a moment, the District Court and Plains Grains both ignored the rules of civil and appellate procedure and the rights of Appellees, who are entitled to proceed upon the judgment failing entry of an injunction or stay, or be given assurances by a bond that they will be compensated for any further delays. If the District Court and Plains Grains had *86 consulted the law, they would have discovered that M. R. App. P. 22(3) provides that, “[i]n the interests of justice,” this Court “may grant, modify, or deny the relief requested.” See Turner v. Mt. Eng’g. & Constr., Inc., 276 Mont. 55, 62, 915 P.2d 799, 804 (1996) (“On application, the supreme court in the interest of justice may suspend, modify, restore, or grant any order made under this subdivision.”). As such, this Court is empowered to consider equitable issues when addressing the bond, which would include allegations of the feasibility or “astronomical-ness” of the price of justice. We explained this exact principle in our previous Order: “This Court retains the authority to review any decision by the district court regarding the stay of execution of a judgment or the denial or granting of an injunction pending appeal. M.R.App.P.22(2).” Moreover, Plains Grains needed no money to seek an injunction. Nonetheless, Plains Grains, without citation to authority and without making any argument to excuse its obligation, simply elected to ignore its obligation to seek to stay or enjoin the judgment. That left Appellees fully within their rights to proceed on the judgment, which is exactly what they have done.
¶77 As noted, this discussion is academic, as the District Court’s order hypothesizing about how “astronomical” the bond would need to be was superseded by our Order instructing the District Court to “enter a written order” and “include findings of fact and conclusions of law, or a supporting rationale, that contains the relevant facts and legal authority... regarding the stay of execution of a judgment or the denial or granting of an injunction pending appeal.” That Order is the law of the case. Appellants ignored our Order. The District Court ignored our Order and failed to enter the appropriate order. Now, this Court joins in ignoring our Order.
¶78 In response, the Court minimizes our Order, stating that law of the case principles extend only to that “portion” of the Order instructing the District Court to rule on the substantive merits of the case, and that our instructions for requesting a stay or injunction on appeal, as well as our instruction to the District Court to enter a complete order on this issue, were merely “advisory instructions” or “comments” regarding the proper procedures to be followed. Opinion, ¶¶ 37-40. The Court here misses the critical point: even assuming arguendo that our Order was merely “advisory” and our “comments” did not constitute the law of the case, they were nonetheless statements of the law. Our instructions to the parties and the District Court reiterated the appellate procedure that Plains Grains was required to follow without an order from this Court. Yet, Plains Grains failed to do so.
*87 ¶79 2. Mootness
¶80 This case has been mooted because Plains Grains failed to stay or enjoin the proceedings and we cannot now grant effective relief or restore the parties to their original positions. Appellees have legally acted upon the judgment. Further, Cascade County has been completely rezoned-reducing the total number of zones in the County from 15 to 12-and a challenge to the new zoning map and regulations is not before us.
¶81 a. Failure to Stay or Enjoin the Proceedings
¶82 A case becomes moot when this Court cannot grant or fashion effective relief, or restore the parties to their original position.[3] Because the parties must be able to be returned to their original positions, this Court has repeatedly warned Appellants to seek a stay of the proceedings, or request an injunction, to preserve the parties’ status quo pending an appeal.[4] If they fail to do so, the case may be mooted because the Court cannot fairly return a party back to his or her position. For example, without a stay or injunction, one of the parties might sell the property or business in question, see Turner, 276 Mont. at 59-63, 915 P.2d at 802-04, or a party might construct a building, at great expense, on questionably rezoned property, see Povsha, ¶¶ 18-24. We cannot undo the sale of land or a business, nor can we deconstruct buildings. We cannot address the merits of such disputes in good conscience because we cannot return parties to the status quo without causing great economic harm. We have thus made *88 it incumbent upon the appealing party to stay or enjoin the proceedings, and thereby preserve the status quo, to prevent this very harm. We have never wavered from this position.
¶83 In Turner, we dismissed an appeal by the lien-holders of the foreclosed “Royal Village” subdivision property as moot, because the property had been sold and the “Appellants allowed [the] foreclosure sale to proceed, did not stay the proceedings, and did not post a supersedeas bond.” Consequently, it was “impossible for this Court to grant effective relief’ because the subject property had been sold and the parties could “not be returned to the status quo.” Turner, 276 Mont. at 63, 915 P.2d at 804.
¶84 Our unanimous opinion in Henesh likewise followed these established principles. Henesh filed suit in the district court against Gallatin County over a preliminary subdivision plat approval, alleging the Commissioners’ decision was unlawful. While the action was pending, the County approved the “Dry Minor Subdivision,” and the Estate owner began selling the lots in the subdivision. We dismissed Henesh’s appeal on mootness grounds, explaining the opportunities she had to apply for a stay or an injunction to preserve her claims, including an injunction preventing final approval of the subdivision while the action was pending in the district court, or an injunction or stay of execution following the district court’s summary judgment order, or an appeal to this Court from any denial of a stay or injunction. Because Henesh “failed to seek available remedies to preserve the status quo pending appeal,” we held she could not “be heard to complain because the Estate and the County continued with the process to secure final approval.” Henesh, ¶¶ 3-7 (emphasis in original).
¶85 The Court avoids the consequences of these holdings, in part, by hiding them within string cites which follow inaccurate summaries. It characterizes Turner and Henesh, as well as Povsha and Mills, discussed below, as addressing the sale of land or property which renders an appeal moot. Opinion, ¶ 41. The Court then offers that the spot zoning context of this case is so different than the “subdivision” context of Turner, Henesh, Povsha, and Mills that disregarding our settled principles of mootness law is here warranted. However, the Court’s characterizations of these cases are inaccurate and it offers no reasoned explanation of why established mootness principles should somehow not apply in a zoning case.
¶86 Our decision in Povsha is so squarely on point that it cannot be distinguished in good faith. Contrary to the Court’s characterization, Povsha did not merely involve a subdivision. Incredibly, the Court *89 misses that it also involved the exact issue involved here-a spot-zoning challenge. The issue in Povsha was whether the City unlawfully subdivided and rezoned land in South Billings from “Agricultural-Open” to “Urban Study Area” for the sole purpose of developing the study area “for commercial uses.” A commercial interest had applied for the zoning change to allow construction of a wholesale auto auction house, and the City’s Development Review Committee held a public review meeting to discuss it. Appellant Povsha and numerous other landowners raised substantial concerns about the incompatibility of the rezoning proposal with the surrounding residential area and nearby Riverfront Park. Following the public hearing, the Review Committee voted to recommend denial of the proposed zone change, due primarily to the incompatibility of the proposed auto auction house with the surrounding residential area. Povsha, ¶¶ 1-10.
¶87 The City Council, however, rejected the Committee’s recommendations and approved the zoning change. Povsha then filed a complaint in the district court, seeking to enjoin and set aside the zoning change and corresponding subdivision approval. Povsha also filed an application for a preliminary injunction to prevent the development of the auto auction house from going forward. The district court held an evidentiary hearing on the request for a preliminary injunction, and denied Povsha’s application. Povsha did not appeal the district court’s denial of the request for preliminary injunction. Povsha, ¶¶ 10-11.
¶88 Relying extensively on Henesh, we concluded that Povsha’s appeal had been mooted because Povsha had not stayed or enjoined the proceedings pending appeal and the auto auction house had been built pursuant to the judgment. We again outlined the process for appealing the trial court’s denial of Povsha’s request for injunctive relief under M. R. App. P. 6(3)(e), or moving the district court and this Court “to stay the zoning change and subdivision proceedings in the City and County under M. R. App. P. [22], before those proceedings became final.” Povsha, ¶ 23 (emphasis added). Povsha had not availed himself of any of these remedies. As we later explained, “[n]otably, we chided the applicants in both Povsha and Henesh for failing to appeal the district court’s denial of the request for injunctive relief or for failing to seek a stay of proceedings until the parties could reach a resolution on the merits. We explained that we could not restore the parties to their original positions ....” City of Whitefish, ¶ 23 (citing Povsha, ¶ 23 and Henesh, ¶ 5).
¶89 Povsha is strikingly similar to the case here and, where it is different, the case for mootness is stronger here than in Povsha. The *90 issue here is whether the County unlawfully rezoned the Urquhart’s land in Northeast Cascade County from agricultural to commercial, for the sole purpose to ‘permit, construct and operate the Highwood Generating Station (HGS).’ The Cascade County Planning Department’s staff report actually recommended the rezoning change, whereas the City’s Development Review Committee in Povsha voted to deny the zone change. The Cascade County Planning Board and the Cascade County Commissioners thereafter held extensive public comment sessions to discuss the proposed zone change. Appellant Plains Grains and numerous other landowners, like those in Povsha, raised substantial concerns about the incompatibility of the rezoning proposal with the surrounding character of the land. Following these public hearings, the Commissioners voted to approve the Urquhart’s rezoning request. Plains Grains then filed their complaint in the District Court, challenging the rezoning approval on a variety of claims including spot zoning and improper public participation, but did not prevail.
¶90 At no time did Plains Grains request a stay of the judgment or an injunction in these proceedings, either from the District Court or this Court. See Povsha, ¶ 23. Simply put, Plains Grains did not avail themselves to any remedy under the law to preserve their claims or the status quo of the parties. Indeed, the appellants in Povsha actually did more to preserve the status quo by requesting an injunction than Plains Grains, who did nothing. Nonetheless, we dismissed their appeal as moot because they failed to avail themselves of further remedies under the rules.
¶91 The Court responds to this presentation of our mootness jurisprudence by attempting to distinguish Povsha, and the lengths it goes to do so are astonishing. First, the Court departs from the opinion and actual holding of Povsha and includes information included only in the briefs of that case, without attribution. Opinion, ¶ 45. If this information was not pertinent when we decided Povsha, it certainly is not pertinent now. It then focuses on minutia from the case, apparently to imply that Povsha does not govern because of minor factual differences. However, this is not a principled distinguishment of controlling precedent. Under the Court’s approach, any case is distinguishable.
¶92 Then, the Court offers that Povsha is distinguishable because “[t]he ‘damage’ that Plains Grains seeks to avoid has not already been done,” Opinion, ¶ 46, and asserts that only the “completion and operation of the HGS would have eliminated this Court’s ability to provide relief to Plains Grains.” Opinion, ¶ 49. In other words, the *91 Court holds that only if the challenged project, which prevailed in the district court, has become fully completed and operational, can a case be considered moot on appeal. This is not the law of judgment execution and stays of judgments, discussed below, but for purposes of the point here-the holding of Povsha-it is not the law of mootness, either. “If this Court cannot restore the parties to their original position, the appeal becomes moot.” Povsha, ¶ 23 (emphasis added, citations omitted). The proper question is whether this Court can restore the parties to their original position, not whether the challenged action has progressed to completion. This Court cannot now restore Southern Montana Electric (SME) to its original position.[5]
¶93 Consequently, following entry of judgment in favor of Appellees, and during the pendency of this appeal, Appellees proceeded on the judgment and the status quo of the parties changed substantially. The Urquharts sold the rezoned property to SME, who then recorded their deeds with the Office of the Cascade County Clerk and Recorder. At substantial cost, SME obtained numerous additional permits it was required to obtain in order to commence construction of the HGS. SME was under a specific deadline to commence construction, pursuant to a Department of Environmental Quality Air Permit. And, as of August 2008, the cost of the plant had approximately doubled as a result of the delay already caused by this litigation.
¶94 Thus, facing mounting costs and permit deadlines, and Plains Grains having failed to meet its obligations to seek a stay or injunction, SME commenced construction of the HGS, expending millions of dollars to develop the property-in accordance with its legal right to do so. This construction lawfully continues today, and there is simply no way to restore the parties to their original positions without substantial financial harm to Appellee SME. This Court can neither fashion any relief nor restore SME to its original, status quo position, as required under the principles of our mootness law. The Court does not even try to offer an explanation as to how SME can be returned to its status quo, because it simply cannot be done. Nor does the Court offer any explanation whatsoever about why it would issue strongly-worded dismissals of the appeals as mooted in Turner, Henesh,Povsha, and Mills, and many others, but simply ignore the law for Plains Grains. A fair application of the law cannot leave these cases standing side-by-side. At a minimum, the Court should take a principled *92 approach and explain that it has today determined to overturn our entire mootness jurisprudence.
¶95 b. Subsequent Legislative Enactment
¶96 Plains Grains’ appeal has also been rendered moot by Cascade County’s subsequent adoption of a new county-wide zoning map and new county-wide zoning regulations. The Court attempts to avoid this additional mootness problem by emasculating Country Highlands. However, that case should be dispositive.
¶97 In Country Highlands, landowners brought suit against the Flathead County Board of Commissioners, alleging the County’s amendments to its growth policy and the continuous rezoning of 215 acres of land, from “agricultural” to eventually “general business,” were invalid. While the case was pending on appeal, Flathead County adopted a new growth policy and specifically incorporated the existing zoning districts. We held the landowners’ appeal was moot because, even were we to strike down the zoning district amendments under the old Growth Policy, the County’s new Growth Policy reenacted the zoning district amendments via incorporation and that action was presumed lawful and valid, absent another challenge. Country Highlands, ¶¶ 8, 13, 22 (citations omitted). We have recognized that adoption and revision of zoning regulations are legislative acts, entitled to presumptions of validity and reasonableness. North 93 Neighbors, Inc. v. Bd. of Co. Commrs. of Flathead Co., 2006 MT 132, ¶ 18, 332 Mont. 327, 137 P.3d 557 (citing Schanz v. City of Billings, 182 Mont. 328, 335, 597 P.2d 67, 71 (1979)).
¶98 The Court offers that Cascade County’s “2009 amendments to the CCZR changed nothing about the 668 acre rezone challenged by Plains Grains. The zoning designation and map remain unchanged for the SME parcel, [and] [t]he area surrounding the SME parcel retains its A-2 ‘Agricultural’ designation.” Opinion, ¶ 31. The Court then concludes that the 2009 amendments “do not purport to repeal the earlier version of the CCZR,” and minimizes the new ordinance as a “mere refinement.” Opinion, ¶ 33.[6]
¶99 Giving the Court the benefit of the doubt, the Court may well have been hindered by the lack of a full record about this issue which results from the absence of a legal challenge to the new zoning ordinance. Nonetheless, the information provided to us by way of supplemental briefing demonstrates that the Cascade County *93 Commissioners undertook an extensive, County-wide examination of the zoning districts and governing rules and regulations. In the spring of2008, while this case was pending on appeal, Cascade County began the process of revising its County-wide regulations and zoning map to satisfy an exhaustive list of objectives, including:
* To update the regulations with current standard zoning language and practices;
* To update and refine definitions;
* To alter zoning districts and boundaries (See accompanying proposed zoning map.);
* To alter allowed uses in the various zoning districts;
* To zone all properties with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout Cascade County;
* To protect residential, business, commercial, and industrial areas alike from harmful encroachment by incompatible uses and to ensure that land allocated to a class of uses shall not be usurped by inappropriate uses;
* To avoid the inappropriate development of lands and provide for reduction of flood damage;...
* To foster a more rational pattern of relationship between residential, business, and industrial uses for the mutual benefit of all; [and]
* To isolate or control the location of unavoidable nuisance producing uses.
Ultimately, the County reduced the total number of zoning districts from 15 to 12, and established a new Multi-Use District. The County then provided the updated zoning map, along with corresponding identified uses, development standards and regulations for “each of these districts.” Obvious from the materials, the County reexamined every zoning district in the entire County and adopted a new general zoning structure.
¶100 The Court attempts to distinguish Country Highlands on the ground that the County’s “2009 amendments to the CCZR changed nothing about the 668 acre rezone challenged by Plains Grains.” Opinion, ¶ 31. Of course they didn’t; the County had just undergone a monumental effort to address that particular zone. Instead, the County revised the entirety of the remaining areas in the County, reducing the total number of zones from 15 to 12, and enacting new regulations. The rezoned parcel at issue in this case was thus placed within a completely new zoning context-surrounded by completely different zones with different regulations than when the current case was *94 brought. The Court here completely misses the point: it has focused solely on the rezoned parcel without realizing that a spot zoning challenge requires an analysis of the surrounding zones as well. Anew challenge providing a new record is required. This case is thus controlled by Country Highlands, and is rendered moot by Cascade County’s subsequent legislative actions taken to institute a new county-wide zoning plan. This Court cannot provide effective relief. Country Highlands, ¶¶ 22-23. The Court’s opinion is nothing more than an advisory opinion about the spot zoning issue as it existed under the former zoning plan, not the current one. Plains Grains must raise its spot zoning challenge under the new zoning structure.
¶101 In response to this issue, the Court attaches a map for the purpose of illustrating that, even after enactment of the 2009 Ordinance, the challenged zone is still a “black island of industrial land surrounded by a sea of green Agricultural land.” Opinion, ¶ 33.1 do not know why the Court would draw such a conclusion without benefit of a full record proving it, but the map is clearly misleading. Within a few miles of the challenged zone is Malmstrom Air Force Base, visible from the property and including its own coal-fired heating plant, large hangars, facilities for storage of nuclear weapons and many large buildings. To the northeast of the parcel is the MaltEuro malting barley plant, with numerous large concrete silos and large buildings. The Great Falls switch yard for electrical transmission switching is just across the Missouri River and is also visible from the property. Within a few miles of the rezoned property are five hydroelectric dams on the Missouri River, as well as high capacity transmission lines, gas pipelines and related facilities, grain silos, elevators, rail lines and numerous other structures. Yet, none of these are included in the Court’s “sea of green” map, and the Court’s reliance on it is flawed. This illustrates the need for a proper record to be developed in response to a challenge to the new, county-wide ordinance-which Plains Grains, again, has failed to do. While we have enough information to know that the zoning has changed, we do not have a full judicial record necessary to adjudicate the spot zoning issues under the new ordinance. For that reason, County Highlands controls and this case is moot.
¶102 c. Lohmeier v. State and the Capable of Repetition yet Evading Review Exception to Mootness
¶103 The Court makes two passing references to our decision in Lohmeier v. State, 2008 MT 307, 346 Mont. 23, 192 P.3d 1137, for the propositions that the spot zoning claim remains viable despite no stay or injunction, and that the transfer of property from the Urquharts to *95 SME does not constitute a changed circumstance rendering Plains Grains’ appeal moot. Opinion, ¶¶ 34, 51 (citing Lohmeier, ¶ 13). Briefly, it is well settled in our mootness jurisprudence that “[a] party may not claim an exception to the mootness doctrine where the case has become moot through that party’s own failure to seek a stay of the judgment.” Turner, 276 Mont. at 60, 915 P.2d at 803 (citing Gates v. Deukmejian, 987 F.2d 1392, 1408 (9th Cir. 1993)); Billings High, ¶¶ 14-18 (citations omitted). “Thus, where a party has failed to obtain-or at least attempt to obtain-a stay of proceedings pending appellate review, that party may not take advantage of the ‘capable of repetition, yet evading review’ exception to the mootness doctrine.” Billings High, ¶ 18 (citing Gates, 987 F.2d at 1409).
¶104 3. The Court’s Errors Regarding SME’s Rights to Proceed from a Lawful Judgment and to Due Process of Law; The Court’s Rejection of SME’s Statements and its Criticisms of SME.
¶105 In an apparent effort to shift the focus of this case from Plains Grains’ failures, the Court conjures up a series of legal claims and aspersions to cast blame upon SME. The Court reasons that this case is not moot because “[i]t seems far from clear ... that SME possessed the necessary permits that would have given it a legal right to develop the property ....” Opinion, ¶ 46. However, issues regarding what permits were necessary and whether SME properly possessed them are not before this Court and, more importantly, it defies clear legal authority to suggest that SME could not proceed from the unstayed, legal judgment in its favor. See Rules of Civil Procedure: Title 25, chapter 9, MCA (Judgment); Title 25, chapter 13, MCA (Execution of Judgment); Title 25, chapter 20, part VII, MCA (Judgment). SME held this right regardless of whether it ultimately decided to change the design of its plant, discussed below. The effect of the Court’s statements to the contrary-that a prevailing party must necessarily wait for the outcome of a possible appeal before acting upon a valid, lawful judgment-contradicts our statutory and procedural framework governing judgments and appeals. See above-referenced statutes and rules of procedure, as well as M. R. App. P. 22(l)(a)(i) and (iii) (Stay of Judgment or Order Pending Appeal).
¶106 This undermining of the right to proceed on a property judgment raises the issue of SME’s constitutional right not to be deprived of its property without compensation or due process of law. Mont. Const, art. II, § 17; U.S. Const, amend. XIV, § 1. Plains Grains never requested, before the District Court or this Court, that SME’s judgment be stayed or enjoined. Procedurally, SME never had notice *96 or opportunity to present evidence in opposition to a stay or an injunction. Consequently, after obtaining a judgment, SME was entitled, as a matter of law, to proceed to develop its land pursuant to that judgment. The Court’s decision today appears to take from SME the investment it has properly made in its property, without compensation or due process of law. See Yellowstone Fed. Credit Union v. Daniels, 2008 MT 111, ¶¶ 28-29, 342 Mont. 451, 181 P.3d 595 (recognizing fundamental rights and interests in property demand “punctilious compliance with all statutory and procedural requirements,” requiring at least notice and a hearing; citations omitted); In re Best, 2010 MT 59, ¶ 22, 355 Mont. 365, 229 P.3d 1201 (“due process requires a fair and impartial tribunal, State v. Moore, 268 Mont. 20, 51, 885 P.2d 457, 477 (1994), overruled on other grounds, State v. Gollehon, 274 Mont. 116, 906 P.2d 697 (1995), and a fair hearing, Matter of Goldman, 179 Mont. 526, 551, 588 P.2d 964, 978 (1978);” citations omitted).
¶107 As if in recognition of the wrong here done to SME, and in order to be able to excuse Plains Grains’ failure to follow the appellate rules, the Court takes measures to make SME’s expenditures in furtherance of its judgment “go away.” It does so, first, by rejecting SME’s explanation of its expenditures. It denies SME any relief for Plains Grains’ failure to seek a stay because it “cannot determine from the record whether SME indeed has spent ‘millions of dollars’ to develop the property ....” Opinion, ¶¶ 48, 50. This begs the question-whose fault is that? Why doesn’t this Court have a record about the precise amount SME has “indeed” spent on developing the property? The answer-because Plains Grains failed to follow the law and our Order. Consequently, a hearing wasn’t held and the District Court did not enter an order setting forth the “findings of fact and conclusions of law, or a supporting rationale, that contains the relevant facts and legal authority,” which we ordered. However, the Court concludes that it is somehow SME’s fault because it “has adduced no evidence” and “failed to substantiate” its expenditures by an accounting, Opinion, ¶ 34, and failed to “substantiate with particularity” its losses, Opinion, ¶ 49, when any lack of evidence is only due to Plains Grains’ failure to follow the law and our Order. ¶108 Every litigant who appears before this Court has an ethical duty of candor to the tribunal, and I see no reason to presume that SME has been untruthful to this Court about the money it has spent developing its land, particularly when the absence of evidence to the contrary-the absence of a record-is not SME’s fault. See Mont. R. Prof. Conduct 3.3(a)(1) (“A lawyer shall not knowingly: (1) make a false *97 statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;”). Plains Grains waived the right to make a record on this issue, but the Court is placing the financial consequence of Plains Grains’ failure upon SME by rejecting its statements without a basis to do so.
¶109 But the Court goes further in casting blame upon SME. The statements made in ¶¶ 47-48 of the Opinion, detailing SME’s missteps and setbacks in pursuing this project, have nothing to do with the issues before the Court-not even the issue of mootness. I can only surmise that they are made solely to discredit SME or the project. The Court subtly raises an issue not litigated by the parties-SME’s consideration of changing the plant to a gas-fired design, Opinion, ¶ 48-to escape the effect of any expenditures SME has made pursuant to original design, a legitimate cost. The Court dismisses the sale of the land and the substantial sums expended thereon as irrelevant to mootness, when our cases show that these issues are directly relevant.
¶110 4. Conclusion
¶111 A summary of the Court’s statements and decisions herein raises serious questions, in my view, about the disposition of this case. Consider the Court’s:
-Excusing Plains Grains’ failure to follow appellate rules and procedures and our previous Order;
-Rejecting application of our substantial mootness jurisprudence on the basis of an inappropriate distinguishment of a controlling case, Povsha;
-Deciding the validity of the zone without a challenge to, or a full judicial record about, a newly passed, county-wide zoning ordinance;
-Undermining the right of SME to proceed on a lawful, unstayed judgment;
-Requiring SME to bear the costs of its reliance upon the valid, unstayed judgment, in possible violation of its due process rights;
-Casting aspersions upon SME for irrelevant setbacks in the process of developing the project.
¶112 I do not understand the animus toward SME reflected in the Court’s decision, and believe the Opinion stands in utter disregard to the law of appellate procedure, to the substantive law of judgments, and to our mootness jurisprudence. The Court has excused Plains Grains from compliance with the rules requiring a stay or injunction of the judgment to preserve the status quo of the parties, and then placed the consequences for that failure upon SME. Our long-established rules thus ring hollow, as their enforcement depends upon *98 the Court’s beck and call. And, in this case, the Court has gone both ways, first requiring precise enforcement of the rules, and then completely abandoning them. While “[a]n independent, fair, and impartial judiciary is indispensable to our system of justice,” Mont. Code of Jud. Conduct preamble (2009), I believe SME has not been given justice here.
¶113 This appeal has been mooted in several different ways under very clear principles. I dissent and would dismiss the appeal.
JUSTICE NELSON joins in the dissenting Opinion of JUSTICE RICE.
JUSTICE COTTER joins in paragraphs 70-101 and 113 of the foregoing dissent.

 The Court asserts that this Dissent “attempt[s] to equate Plains Grains’ situation with that in Murphy Homes, Inc.” Opinion, ¶ 39, and then proceeds to discuss Murphy at length to distinguish the two cases. However, the Dissent does not do so. Murphy is cited here merely to demonstrate the scope of the law of the case doctrine. The Court’s analysis of the facts of Murphy is a straw man argument.

 See In re Estate of Snyder, 2009 MT 291, ¶ 6, 352 Mont. 264, 217 P.3d 1027 (“The law-of-the-case doctrine is based on policies of judicial economy and finality of judgments[;] a prior decision of this Court resolving an issue between the same parties is binding and may not be relitigated.”); Muri v. Frank, 2003 MT 316, ¶ 11, 318 Mont. 269, 80 P.3d 77; In re Potts, 2007 MT 236, ¶ 33, 339 Mont. 186, 171 P.3d 286; Jacobsen v. Allstate Ins. Co., 2009 MT 248, ¶ 29, 351 Mont. 464, 215 P.3d 649 (citing Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure vol. 18B, § 4478.3, 733 (3d ed., West 2005)); Moody v. Northland Royalty Co., 286 Mont. 89, 92-93, 951 P.2d 18, 20-21 (1997); Hafner v. Conoco, Inc., 1999 MT 68, ¶ 20, 293 Mont. 542, 977 P.2d 330; State v. Gilder, 2001 MT 121, ¶¶ 8-12, 305 Mont. 362, 28 P.3d 488 (collecting cases). [All internal citations omitted.]

 State ex rel. Hagerty v. Rafn, 130 Mont. 554, 559-60, 304 P.2d 918, 921 (1956); Gallatin Trust & Sav. Bank v. Henke, 154 Mont. 170, 176-77, 461 P.2d 448, 451-52 (1969), overruled on unrelated grounds, LeClair v. Reiter, 233 Mont. 332, 335, 760 P.2d 740, 742 (1988); First Sec. Bank of Kalispell v. Income Props., Inc., 208 Mont. 121, 126-27, 675 P.2d 982, 984-85 (1984); Martin Dev. Co. v. Keeney Constr. Co., 216 Mont. 212, 218-20, 703 P.2d 143, 147-48 (1985) (clarifying our mootness jurisprudence in light of Hagerty, Gallatin and other cases); Turner, 276 Mont. at 59-63, 915 P.2d at 802-04; In re Marriage of Gorton, 2008 MT 123, ¶ 16, 342 Mont. 537, 182 P.3d 746 (citing Billings High Sch. Dist. No. 2 v. Billings Gaz., 2006 MT 329, ¶ 12, 335 Mont. 94, 149 P.3d 565).

 First Sec. Bank, 208 Mont. at 126-27, 675 P.2d at 984-85; Martin Dev., 216 Mont. at 218-20, 703 P.2d at 147-48; Turner, 276 Mont. at 59-63, 915 P.2d at 802-04; Van Troba v. Mont. State Univ., 1998 MT 292, ¶ 35, 291 Mont. 522, 970 P.2d 1029; Shamrock Motors, Inc. v. Ford Motor Co., 1999 MT 21, ¶¶ 19-22, 293 Mont. 188, 974 P.2d 1150; Billings High, ¶¶ 12-21; City of Bozeman v. Taylen, 2007 MT 256, ¶¶ 29-30, 339 Mont. 274, 170 P.3d 939; Henesh v. Bd. of Commrs. of Gallatin Co., 2007 MT 335, ¶¶ 5-6, 340 Mont. 239, 173 P.3d 1188; Povsha v. City of Billings, 2007 MT 353, ¶¶ 18-24, 340 Mont. 346, 174 P.3d 515; Gorton, ¶¶ 16-18; Mills v. Alta Vista Ranch, LLC, 2008 MT 214, ¶ 22, 344 Mont. 212, 187 P.3d 627; Country Highlands Homeowners Assn. v. Bd. of Co. Commrs. of Flathead Co., 2008 MT 286, ¶ 16, 345 Mont. 379, 191 P.3d 424; City of Whitefish v. Bd. of Co. Commrs. of Flathead Co., 2008 MT 436, ¶¶ 23-27, 347 Mont. 490, 199 P.3d 201. [All subsequent case histories and internal citations omitted.]

 Our mootness jurisprudence includes more than Povsha, but the Court does not address, in response, the additional contrary holdings in Turner, Henesh, and Mills.

 As with Povsha, the Court attempts to distinguish Country Highlands by quoting from the briefs in that case.