No. 00-121

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 327

303 Mont. 47

15 P. 3d 395

RONALD ALLEN SMITH,

Petitioner and Appellant,

v.

STATE OF MONTANA,

Respondent and Respondent.

APPEAL FROM: District Court of the Eleventh Judicial District,

In and for the County of Flathead,

The Honorable Katherine R. Curtis, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Don Vernay, Attorney at Law, Kalispell, Montana

Gregory A. Jackson, Attorney at Law, Helena, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; C. Mark Fowler,

Assistant Attorney General, Helena, Montana

Thomas J. Esch, Flathead County Attorney, Kalispell, Montana

Submitted on Briefs: August 3, 2000
Decided: December 14, 2000

Filed:

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

¶1 Ronald Allen Smith appeals from the dismissal of his petition for postconviction relief by the Eleventh Judicial District Court, Flathead County. We affirm.

¶2 We restate the issues as follows:

¶3 1. Did the District Court err in ruling that Smith is procedurally barred from raising the issue of the constitutionality of Montana's statutory scheme of selecting substitute judges as applied to his case?

¶4 2. Did the District Court err in failing to grant Smith a hearing so he could present evidence that Judge Larson's post-sentencing actions show bias toward him and his counsel?

Background

¶5 Ronald Allen Smith pled guilty on February 24, 1983, to two counts of aggravated kidnaping and two counts of deliberate homicide for his participation in the kidnaping and deaths of Thomas Running Rabbit, Jr., and Harvey Mad Man, Jr. The facts of the crimes are summarized in *State v. Smith* (1985), 217 Mont. 461, 705 P.2d 1087 (*Smith I*). The death penalty was imposed in 1983, consistent with Smith's request. This Court affirmed the death sentence in *Smith I*.

¶6 After the initial sentence was imposed, Smith petitioned for a writ of habeas corpus in federal court. His petition was conditionally granted in *Smith v. McCormick* (9th Cir. 1990), 914 F.2d 1153. The Ninth Circuit ordered the Montana court to resentence Smith

and granted him an evidentiary hearing in federal court on his claims of ineffective assistance of counsel.

¶7 On re-sentencing, the original judge in Montana's Eleventh Judicial District Court disqualified himself and asked another district judge, the Honorable Leif B. Erickson, to assume jurisdiction. When Judge Erickson accepted a position on the federal bench shortly thereafter, he recused himself and the Honorable Douglas G. Harkin of the Fourth Judicial District Court assumed jurisdiction. Following a second sentencing hearing, Smith moved to disqualify Judge Harkin on the basis of bias. That motion was denied and Judge Harkin imposed the death penalty. On appeal, this Court vacated that sentence and remanded for re-sentencing. *State v. Smith* (1993), 261 Mont. 419, 863 P.2d 1000 (*Smith II*).

¶8 On remand, the case was assigned to the Honorable John W. Larson of Montana's Fourth Judicial District Court. Judge Larson presided over a sentencing hearing in May of 1995, and in September of that year issued an 82-page decision sentencing Smith to death.

¶9 While appeal of the third sentence was pending in this Court, Judge Larson issued an "Order on Attorney's Fees" which reduced Smith's counsel's attorney fees and travel monies and imposed other restrictions on how counsel could work on Smith's case. In response to that order, Smith's counsel filed an application for writ of supervisory control with this Court. We granted supervisory control, striking the District Court's disallowance of expenses for counsel's travel time related to preparing an appeal and instead allowing "actual and necessary travel expenses relating to preparation of the defense" on appeal.

¶10 Also during the pendency of the appeal, Smith filed with this Court a "Motion to Remand to District Court or in the Alternative to Allow Supplementation of Record on Appeal," in which he alleged that Judge Larson was possibly biased and influenced by the media. Smith attached to his motion copies of seven newspaper articles concerning his case. We denied the motion, stating that Smith had not established that anything in the articles had influenced Judge Larson in sentencing him, and that the articles had not been shown to be appropriate or relevant for consideration on appellate review.

¶11 We ultimately affirmed the death sentence as imposed in September 1995, and the United States Supreme Court denied Smith's petition for writ of certiorari. *State v. Smith* (1996), 280 Mont. 158, 931 P.2d 1272, *cert. denied*, 522 U.S. 965, 118 S.Ct. 410, 139 L. Ed.2d 314 (1997) (*Smith III*).

¶12 In November 1998, Smith petitioned the District Court for postconviction relief. In attacking his third death sentence, he set forth four claims for relief:

1. Montana's statutory procedure for selecting district judges to preside in cases in which the original judge has been disqualified is unconstitutional as applied to Smith under the due process clauses of the state and federal constitutions.

2. The sentencing court considered prior death sentences and Dr. William Stratford's testimony from a prior sentencing proceeding in violation of Smith's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution and Article II, Sections 17, 24, and 25 of the Montana Constitution.

3. The State's 16-year incarceration of Smith and repetitive sentencing where the judge who imposed the original death sentence selected the successor sentencing judge and where the successor sentencing judge was aware of and was influenced by the prior death sentences violates Smith's rights under the Sixth, Eighth, and Fourteenth Amendments to the United State Constitution and Article II, Sections 17, 22, 24, and 28 of the Montana Constitution.

4. The State's 16-year incarceration and repetitive sentencing of Smith violates his rights under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article II, Sections 17, 22, 24, and 28 of the Montana Constitution because he has been "forced to undergo the pain, suffering and uncertainty of being incarcerated and living under a possibility of sentence of death for over sixteen years."

Judge Larson directed that the petition for postconviction relief be filed as a separate civil proceeding and invited the Honorable Katherine R. Curtis to assume jurisdiction over it, while he retained jurisdiction over the criminal proceedings.

¶13 With its response to the petition, the State filed a motion to dismiss on procedural and res judicata grounds. Following briefing, Judge Curtis granted that motion. Smith appeals.

Standard of Review

¶14 A district court may dismiss a petition for postconviction relief as a matter of law for failure to state a claim for relief. Section 46-21-201(1)(a), MCA. Postconviction relief is

not available upon claims for relief that could have been raised on direct appeal. Section 46-21-105(2), MCA. Our standard of review of a district court's denial of a petition for postconviction relief is whether the court's findings of fact are clearly erroneous and whether its conclusions of law are correct. *State v. Hanson*, 1999 MT 226, ¶ 9, 296 Mont. 82, ¶ 9, 988 P.2d 299, ¶ 9.

## Issue 1

¶15 Did the court err in ruling that Smith is procedurally barred from raising the issue of the constitutionality of Montana's statutory scheme for selecting substitute judges as applied to his case?

¶16 This issue relates to the dismissal of Smith's first claim for relief. The District Court dismissed this claim under the procedural bar set forth at § 46-21-105(2), MCA: "When a petitioner has been afforded the opportunity for a direct appeal of the petitioner's conviction, grounds for relief that were or could reasonably have been raised on direct appeal may not be raised, considered or decided in a proceeding brought under this chapter."

¶17 The specific statutory provision to which Smith objects is now found at § 3-1-804(1) (b), MCA: "The first district judge who has been substituted or disqualified for cause shall have the duty of calling in all subsequent district judges." The provision has been in effect in substantially the same form since at least 1981, prior to the crimes of which Smith was convicted. Smith could have challenged the constitutionality of this provision as early as in his second sentencing proceeding which began in 1991, at which time the statutory procedure was used to select a new judge for Smith's resentencing. Smith ignored another opportunity to raise this claim following his January 14, 1992 sentencing hearing, when he filed an affidavit to disqualify the then-presiding judge, Judge Harkin, pursuant to § 3-1-805, MCA. The original sentencing judge again called in a replacement. Nothing in the record shows that Smith's attorney was precluded from raising this issue at that time, nor was this issue precluded on the appeal of Smith's second sentence. Finally, Smith had additional opportunities to contest this statutory proceeding during his third sentencing and the appeal from that sentencing.

¶18 We conclude that the procedural bar providing that postconviction relief is not available upon claims for relief that could have been raised on direct appeal clearly applies to Smith's first claim, which could have been raised on several direct appeals. We affirm

the District Court's dismissal of Smith's petition for postconviction relief as to that claim.

## Issue 2

¶19 Did the District Court err in failing to grant Smith a hearing so that he could present evidence that Judge Larson's post-sentencing actions show bias toward him and his counsel?

¶20 Smith contends that facts showing that Judge Larson was biased occurred after the record was transmitted for purposes of his appeal in *Smith III*, thereby precluding him from discussing them on appeal. On that basis, he asserts entitlement, at the least, to an evidentiary hearing on his third postconviction claim, pertaining to the selection of a judge by the original sentencing judge.

¶21 Specifically, Smith desires an evidentiary hearing to allow him to present and develop evidence relative to comments made by Judge Larson to the media following his sentencing hearing, but before sentence was imposed. According to Smith, Judge Larson's comments demonstrated bias. Smith also claims entitlement to an evidentiary hearing on whether Judge Larson demonstrated bias by imposing restrictions on defense counsel fees and travel expenses during preparation of the appeal in *Smith III*.

¶22 In support of his argument, Smith cites *State v. Bromgard* (1995), 273 Mont. 20, 901 P.2d 611. Our decision in *Bromgard* hinged on statutory language relating to supplemental petitions for postconviction relief: if "the court *on hearing* a subsequent petition finds grounds for relief that could not reasonably have been raised . . . ." Section 46-21-105(1), MCA (1993) (emphasis added). We implied that, by the use of the words "on hearing," the statute required an evidentiary hearing to determine whether grounds raised in a subsequent petition for postconviction relief could have been raised in the original petition. *Bromgard*, 273 Mont. at 24, 901 P.2d at 614. That (since-repealed) statutory provision relating to subsequent petitions for postconviction relief has no application to a case such as this one, however, which involves an appeal from the dismissal of an original petition for postconviction relief.

¶23 Smith also cites language from this Court's opinion in *Hagen v. State*, 1999 MT 8, 293 Mont. 60, 973 P.2d 233, where we stated:

Raising record-based ineffective assistance of counsel claims on direct appeal does

not foreclose raising non record-based claims via petition for postconviction relief. Indeed, only those ineffective assistance claims which are essentially record-based can be raised on direct appeal; where allegations of ineffective assistance cannot be documented from the record in the underlying case, such claims can only be raised in a postconviction proceeding.

*Hagen, ¶ 15 (citations omitted). He claims entitlement to an evidentiary hearing on the question of Judge Larson's bias under Hagen because he only became aware of some facts indicating Judge Larson's bias following the sentencing hearing and his efforts to make those facts a part of the record on appeal before this Court were thwarted. Consequently, Smith posits, the issue of bias which was based on those facts could not have been raised on appeal.*

¶24 The State points out, however, that most of the newspaper articles Smith cited in his "Motion to Remand to District Court or in the Alternative to Allow Supplementation of Record on Appeal" were published before his sentencing by Judge Larson. In fact, in his direct appeal, Smith urged that Judge Larson's media contacts, including his post-sentencing comments to media, showed he was influenced by passion, prejudice, or another arbitrary factor. This Court fully considered, but rejected, that contention. *Smith III*, 280 Mont. at 181-83, 931 P.2d at 1286-87. To that extent, the issue of Judge Larson's alleged bias was raised on direct appeal and is procedurally barred under § 46-21-105(2), MCA.

¶25 Smith's further contention that Judge Larson's bias was established by the imposition of limitations on attorney fees and expenses incurred in preparing the appeal for *Smith III* is negated to a large degree by this Court's limited acceptance of supervisory control as to the imposition of those limitations. In our 1996 order accepting supervisory control, we merely deleted a condition that Judge Larson had imposed denying the payment of counsel expenses for travel time, without commenting upon or interfering with other limitations which Judge Larson imposed. Nor did we deem it necessary to grant Smith's request for "such other relief as is meet and proper in the premises."

¶26 At any rate, Smith does not contend that Judge Larson's post-sentencing actions, standing alone, constitute grounds for postconviction relief. Instead, Smith's postconviction claim of bias by Judge Larson as the sentencing judge is essentially the same claim raised on direct appeal, to which is added Smith's hope of establishing additional facts showing bias at an evidentiary hearing. Arguably, under Smith's theory, every claim raised on appeal could be transformed into a different claim with the accumulation of additional facts over time. Nothing in the law permits such an approach.

¶27 Res judicata bars relitigation, in a petition for postconviction relief, of issues already determined on direct appeal if: (1) the same ground presented in the subsequent application was determined adversely to the applicant in a prior action; (2) the prior determination was on the merits; and (3) the ends of justice would not be served by reaching the merits of the subsequent application. *State v. Baker* (1995), 272 Mont. 273, 282, 901 P.2d 54, 59 (citing *Sanders v. United States* (1963), 373 U.S. 1, 15, 83 S.Ct. 1068, 1077, 10 L.Ed.2d 148, 161). The res judicata bar also applies to issues considered in an earlier application for supervisory control. *State v. Smith* (1986), 220 Mont. 364, 372, 715 P.2d 1301, 1306.

¶28 We are hard-pressed to find any allegations by Smith in the present case which have not previously been considered in one form or another by this Court. As the State points out, Smith's request for a hearing on his "new evidence" is really nothing more than a request for a fishing expedition. Postconviction relief proceedings are not a discovery device in which a petitioner, through broad allegations in a verified pleading, may establish the right to an evidentiary hearing.

¶29 In his reply brief, Smith argues that because this is a death penalty case, the interests of justice require that his claims be determined on their merits. The State has moved to have this portion of the reply brief stricken as new material impermissibly raised at that time. *See* Rule 23(c), M.R.App.P., and, *e.g., Kinsey-Cartwright v. Brower*, 2000 MT 198, ¶ 9, ___ Mont. ___, ¶ 9, 5 P.3d 1026, ¶ 9. Because this argument was first raised in the reply brief, we have not considered it.

¶30 We conclude that Smith has raised nothing in support of his third claim for relief which is not procedurally barred by § 46-21-105(2), MCA, or the doctrine of res judicata. We hold, therefore, that the District Court did not err in failing to grant Smith an evidentiary hearing on his allegations that Judge Larson's post-sentencing actions show bias toward him and his counsel.

¶31 Having considered and rejected Smith's arguments on appeal, we affirm the District Court's dismissal of his petition for postconviction relief.

/S/ KARLA M. GRAY

We concur:

/S/ J. A. TURNAGE

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART

Justice Terry N. Trieweiler concurring.

¶32 I concur with the result of the majority opinion, although I do not agree with all that is said therein.

/S/ TERRY N. TRIEWEILER