FILED

01/31/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0627

DA 15-0627

# IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 18

DANIEL GERARD LACEY,

        Petitioner and Appellant,

    v.

STATE OF MONTANA,

        Respondent and Appellee.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DV 10-1697
Honorable Gregory R. Todd, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Colin M. Stephens, Smith & Stephens, P.C., Missoula, Montana

        For Appellee:

            Timothy C. Fox, Montana Attorney General, Tammy K Plubell, Assistant
Attorney General, Helena, Montana

            Scott D. Twito, Yellowstone County Attorney, Billings, Montana

Submitted on Briefs:  December 7, 2016

Decided:  January 31, 2017

Filed:

                           Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Petitioner and Appellant, Daniel Gerard Lacey (Lacey), appeals from the order of the Thirteenth Judicial District Court, Yellowstone County, denying his postconviction relief petition, request for counsel, and request for an evidentiary hearing. We affirm, restating the issues as follows:

*1. Did the District Court err by denying the petition for postconviction relief?*

*2. Did the District Court err by denying the requests for counsel and for an evidentiary hearing?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 Lacey pled guilty to four counts of felony Sexual Intercourse Without Consent and two counts of felony Sexual Assault. The facts related to these convictions are set forth in *State v. Lacey*, 2009 MT 62, 349 Mont. 371, 204 P.3d 1192, wherein we affirmed Lacey's convictions, and we restate only those facts applicable to the issues raised here.

¶3 In February 2005, Lacey and his then-girlfriend, Carla Dozier (Dozier), moved into a house together in Billings. The lease was exclusively in Dozier's name. Dozier had three children from previous relationships who also lived in the home with her and Lacey. The home contained a makeshift office, accessible by all members of the home, where Lacey routinely kept his laptop. While using Lacey's laptop, Dozier discovered sexually explicit images involving children, including pictures showing Lacey sexually abusing Dozier's six-year-old daughter. Dozier informed the Billings Police Department (BPD), who contacted the Federal Bureau of Investigation (FBI). Officers ultimately

2

conducted searches of the house and garage, and seized the laptop, with Dozier's consent. A warrant was obtained to search the laptop.

¶4     The search of the computer revealed numerous images of child pornography that Lacey had taken, including some images of Lacey engaging in sexually explicit conduct with Dozier's daughter.  The computer also contained numerous images of child pornography Lacey had downloaded from the Internet.  The evidence seized from the garage also revealed a videotape of Lacey sexually abusing a toddler girl he was babysitting.  In sum, investigators found 217 movies and over 3,000 images of child pornography on the computer, including images of children clearly under the age of twelve and engaged in sadistic or masochistic abuse or other violence.

¶5     The State of Montana filed an amended information charging Lacey with four counts of felony Sexual Intercourse Without Consent and five counts of felony Sexual Assault.  Lacey was also charged in United States District Court for the District of Montana with three counts of Sexual Exploitation of Children, one count of Receipt of Child Pornography, one count of Possession of Child Pornography, and Forfeiture.

¶6     Lacey pled guilty in the United States District Court to two counts of Sexual Exploitation of Children and one count of Possession of Child Pornography.  He was sentenced to a total of 30 years in prison.

¶7     On his state charges, Lacey moved to suppress all evidence discovered in the course of the investigation.  Two of those arguments are relevant to this appeal.  First, Lacey argued that the seizure and search of his laptop violated his right to privacy under

3

both Montana and Federal law, arguing Dozier did not have authority to consent to its seizure. Second, Lacey argued that the warrantless search of his garage was illegal because he never gave consent. Lacey argued that all evidence obtained flowed from illegal searches and seizures, so it should all be suppressed as "fruit of the poisonous tree."

¶8 After the District Court denied his motions to suppress, Lacey entered a plea deal with the State of Montana, reserving his right to appeal the District Court's denials of his motions. Lacey pled guilty to four counts of felony Sexual Intercourse Without Consent and two counts of felony Sexual Assault. The State dismissed the remaining counts. Altogether, Lacey was sentenced to life in prison.

¶9 On appeal to this Court, Lacey argued that the District Court erred by not suppressing the physical evidence seized by the FBI and BPD. Specifically, he argued that Dozier "did not possess the requisite joint access, control, common authority, or possessory interest in the laptop in order to consent to its search and subsequent seizure," and that Dozier needed actual, not apparent, authority to consent. Lacey also argued that he "had an actual and reasonable expectation of privacy in his computer files where the child pornography was found" because they were placed in a "hidden" file on his laptop and computers should be entitled to greater protection under the law of search and seizure. Regarding the garage search, Lacey argued that he had a reasonable and actual "expectation of privacy in his boxes and containers which were in the garage, and that Dozier did not have the required actual authority to consent to their search." Lacey

4

argued that all the physical evidence should be excluded under the "poisonous tree" doctrine.

¶10     This Court rejected Lacey's suppression arguments. Regarding the laptop, we stated that Lacey correctly argued that Dozier "did not have the right or authority to consent to the seizure of [his] computer" and, therefore, the officer who seized the laptop needed to have probable cause to do so. *Lacey*, ¶ 49. We stated that "[a]rguably, Dozier's statement to Officer Spaulding that she had observed images on the laptop showing Lacey sexually abusing her minor daughter was sufficient, by itself, to demonstrate probable cause to seize the laptop." *Lacey*, ¶ 52. Examining the exceptions to the fruit of the poisonous tree doctrine, we sua sponte determined that, even if probable cause to seize the laptop was lacking, the inevitable discovery exception applied and the search was proper. *Lacey*, ¶¶ 52-56. Regarding the search of the boxes in the garage, we held that "Dozier had sufficient common authority to consent to their search" because Lacey let his items "remain co-mingled, unmarked, and unlocked in a common area in a house he shared with Dozier which was rented in her name alone." *Lacey*, ¶ 41.

¶11     After we affirmed his convictions, Lacey initiated this proceeding, making four claims of ineffective assistance of counsel. First, Lacey contended that his trial counsel was ineffective because she failed to "challenge the 'exceptions' to [*Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407 (1963)] and the other legal requirements needed to search and seize under the 4th Amendment." Lacey argued that, although his trial counsel argued that all evidence should be suppressed under the fruit of the poisonous

5

tree doctrine, she should also have proactively argued against the three exceptions to the doctrine. Second, Lacey claimed his trial counsel failed "to challenge the government[']s warrantless seizure of personal items retrieved from containers in the garage following a 'third party consent to search' said containers, in the absence of showing that probable cause clearly existed to seize personal items, without a warrant, once removed from containers and in plain view." Third, Lacey claimed his counsel erred by failing to seek a writ of supervisory control, after the denial of his suppression motions. Finally, Lacey argued his counsel erred by "failing to file a motion to dismiss State charges; based on MCA 46-11-504 (1) Double Jeopardy, after petitioner plead [sic] guilty and was sentenced to his federal charges which arose out of the same transaction." Lacey also moved for appointment of postconviction counsel and for the District Court to hold an evidentiary hearing.

¶12 The District Court held that all of Lacey's claims were barred either procedurally or for failure to state a claim, and denied Lacey's request for counsel and a hearing. Lacey challenges these rulings on appeal.

**STANDARD OF REVIEW**

¶13 We review a district court's denial of postconviction relief to determine if the court's findings of fact are clearly erroneous, and if its conclusions of law are correct. *Kenfield v. State*, 2016 MT 197, ¶ 7, 384 Mont. 322, 377 P.3d 1207. We review discretionary rulings in postconviction relief proceedings, including rulings related to whether to hold an evidentiary hearing, for an abuse of discretion. *Wilkes v. State*, 2015

6

MT 243, ¶ 9, 380 Mont. 388, 355 P.3d 755.  We review de novo the mixed questions of law and fact presented by claims of ineffective assistance of counsel.  *Wilkes*, ¶ 9.

## DISCUSSION

¶14    *1. Did the District Court err by denying Lacey's postconviction relief petition?*

¶15    Postconviction proceedings are governed by the statutory requirements in Title 46, chapter 21, MCA.  "When a petitioner has been afforded the opportunity for a direct appeal of the petitioner's conviction, grounds for relief that were or could reasonably have been raised on direct appeal may not be raised, considered, or decided in a proceeding brought under this chapter."  Section 46-21-105(2), MCA (2005).[1]  A district court may dismiss a postconviction petition "as a matter of law for failure to state a claim for relief."  Section 46-21-201(1)(a), MCA.

¶16    When considering whether a claim "could reasonably have been raised on direct appeal" we determine if the claim is apparent based on the trial record.  *State v. Herrman*, 2003 MT 149, ¶ 24, 316 Mont. 198, 70 P.3d 738 ("[I]f the Court cannot make that determination from the record before it, then it must decline to proceed further and allow the defendant to raise his ineffective assistance of counsel claim in a petition for postconviction relief."); *State v. Lamere*, 2005 MT 118, ¶ 9, 327 Mont. 115, 112 P.3d 1005.  "When claims of ineffective assistance are capable of resolution by examining the record alone, they are appropriate for consideration on direct appeal."  *State v. Howard*, 2011 MT 246, ¶ 21, 362 Mont. 196, 265 P.3d 606.  We "ask 'why' counsel did or did not

---

[1] All Montana Code Annotated references hereinafter are from the 2005 edition unless otherwise indicated.

7

perform as alleged and then seek to answer the question by reference to the record."

*Howard*, ¶ 21 (citing *State v. Kougl*, 2004 MT 243, ¶ 14, 323 Mont. 6, 97 P.3d 1095). If

we are unable to determine "why" counsel did or did not perform as alleged, those claims

are addressed in a postconviction proceeding. *Kougl*, ¶ 14; *Howard*, ¶ 21.

¶17 Postconviction petitions are also subject to res judicata. "If [the issues raised in the

postconviction petition] were adequately raised [on direct appeal], the doctrine of res

judicata bars relitigation of the issues." *Gollehon v. State*, 1999 MT 210, ¶ 51, 296 Mont.

6, 986 P.2d 395.

> Res judicata bars relitigation, in a petition for postconviction relief, of
> issues already determined on direct appeal if: (1) the same ground presented
> in the subsequent application was determined adversely to the applicant in a
> prior action; (2) the prior determination was on the merits; and (3) the ends
> of justice would not be served by reaching the merits of the subsequent
> application.

*Smith v. State*, 2000 MT 327, ¶ 27, 303 Mont. 47, 15 P.3d 395; *accord State v. Baker*,

272 Mont. 273, 282, 901 P.2d 54, 59 (1995). "[E]nds of justice" considerations, include,

for example, where "a criminal defendant is potentially subject to a facially illegal

sentence," *State v. Southwick*, 2007 MT 257, ¶ 17, 339 Mont. 281, 169 P.3d 698, or

"manifest error" is present in the prior proceeding, *Kills on Top v. State*, 279 Mont. 384,

400, 928 P.2d 182, 192 (1996) (quoting *State v. Zimmerman*, 175 Mont. 179, 185, 573

P.2d 174, 178 (1977)).

¶18 As determined herein, Lacey's suppression claims are barred by the procedural

and substantive requirements for postconviction petitions. However, his claims regarding

a writ of supervisory control and double jeopardy are not. These two claims require an

8

examination of his trial counsel's performance outside of the trial record and, as such, are appropriately raised in a postconviction proceeding. Each claim is addressed in turn.

**Suppression Issues**

¶19 Regarding the garage search, Lacey claims that his counsel was ineffective because she should have argued that the consent to search given by Dozier was ineffective without actual probable cause to search the containers. However, the consent issue was squarely addressed and resolved by this Court in Lacey's direct appeal. Examining Lacey's argument that Dozier did not have authority to consent, we held that "Lacey assumed the risk that Dozier could in fact assert control" over his items because he allowed "his items to remain co-mingled, unmarked, and unlocked in a common area in a house he shared with Dozier which was rented in her name alone." *Lacey*, ¶ 41. Lacey's claim against his counsel is mooted because third-party consent is an exception to the warrant requirement and, therefore, no probable cause for a warrant was needed. *Lacey*, ¶¶ 37, 41. As such, this claim is barred by this Court's holding on direct appeal. Section 46-21-105(2), MCA.

¶20 Regarding the laptop search, Lacey's argument is barred by res judicata. On direct appeal, Lacey argued that the evidence seized from his laptop should be suppressed because "computers are entitled to greater protection under the law of search and seizure" and that the evidence found thereon should be suppressed because "the 'fruit of the poisonous tree' doctrine applies." *Lacey*, ¶¶ 30, 32. In his postconviction petition, Lacey claimed that his counsel was ineffective because she failed "to properly challenge the

9

'exceptions' to [*Wong Sun*]." Lacey contends, in effect, that his counsel should have argued—in addition to arguing the evidence should be excluded under *Wong Sun*—that the exceptions to *Wong Sun* did not apply.

¶21 In the direct appeal, we accepted Lacey's argument that "Dozier did not have the right or authority to consent to the seizure" of the laptop. *Lacey*, ¶ 49. However, we then examined whether Officer Spaulding had probable cause to seize the laptop and, lacking that, whether one of the exceptions to the fruit of the poisonous tree doctrine applied. Noting that we could apply the inevitable discovery exception sua sponte—"provided there is a sufficient record"—we held "it is clear, under the circumstances presented here that the evidence later discovered on the laptop pursuant to the federal search warrant is admissible under the 'inevitable discovery' exception to the fruit of the poisonous tree doctrine." *Lacey*, ¶¶ 52, 55-56.

¶22 Thus, Lacey pursues an issue in his postconviction petition that has already been resolved. This Court made that determination on the merits, squarely applying case law regarding inevitable discovery, and holding there was "no doubt that the evidence on the laptop would have been inevitably discovered even if Officer Spaulding had not initially seized the laptop after speaking with Dozier." *Lacey*, ¶ 56. We do not find any "manifest injustice" or other grounds where the "ends of justice" prohibits application of res judicata. *Smith*, ¶ 27. As such, Lacey's argument that his counsel was ineffective because she did not argue the exceptions to the fruit of the poisonous tree doctrine is barred. Re-phrasing the issue as ineffective assistance of counsel does not change the

10

fact that this Court reached and decided the issue on its merits. Lacey does not get a second bite at the apple.

**Writ of Supervisory Control and "Double Jeopardy"**

¶23 Lacey claims his trial counsel provided inadequate assistance by failing to seek a writ of supervisory control after his suppression motions were denied, and by not raising a double jeopardy issue after he pled guilty in Federal Court. Montana evaluates claims of ineffective assistance of counsel under the two-prong test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). *Whitlow v. State*, 2008 MT 140, ¶ 10, 343 Mont. 90, 183 P.3d 861. Proving ineffective assistance requires:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064.

¶24 To demonstrate the representation was deficient, the defendant "must show that counsel's representation fell below an objective standard of reasonableness," i.e., it was "reasonable considering all the circumstances." *Whitlow*, ¶ 14 (citing *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2064-65). Further, rather than seeking to scrutinize counsel's performance, "every effort must be made 'to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Whitlow*, ¶ 15 (quoting *Strickland*, 466

11

U.S. at 689, 104 S. Ct. at 2065). And, there is a "strong presumption" that "counsel's conduct falls within the wide range of reasonable professional assistance." *Whitlow*, ¶ 15 (citing *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065).

¶25 Lacey claims that his trial counsel should have sought a petition for writ of supervisory control with this Court following the District Court's denial of his suppression motions. In response to Lacey's postconviction petition, the District Court requested Lacey's trial attorney file an affidavit in response to Lacey's claims. Regarding a writ of supervisory control, Lacey's defense counsel averred:

> I have filed for such writs, and am familiar with not only the criteria set out in the relevant court rule, but also, the practice of the Montana Supreme Court as reflected in case law, and in my own law practice. Such writs are not granted as a matter of course, and in fact, are very rarely granted. A denial of a motion to suppress evidence in a criminal case would not be accepted by the Montana supreme [sic] Court on a writ of supervisory control because those issues are not of statewide interest, nor of such an unusual nature in the area of state constitutional law, such that the Court would consider granting such a writ.

¶26 The Montana Rules of Appellate Procedure provide that the writ of supervisory control is

> sometimes justified by circumstances of an emergency nature, as when a cause of action or a right has arisen under conditions making due consideration in the trial courts and due appeal to this court an inadequate remedy, or when supervision of a trial court other than by appeal is deemed necessary or proper.

M. R. App. P. 17(a) (2005). Lacey's case did not meet the required standard for a writ of supervisory control. There was no "emergency," nor was the District Court acting under a mistake of law or gross injustice meaning a "due appeal" was inadequate or supervision

12

of the trial court was "necessary or proper." M. R. App. P. 17(a) (2005). The normal appeals process was an appropriate remedy following the District Court's rulings. Accordingly, trial counsel's decision to not seek a writ of supervisory control following the District Court's ruling on the suppression was not "deficient" and did not fall below the standard of reasonableness.

¶27 Then, citing to *State v. Neufeld*, 2009 MT 235, 351 Mont. 389, 212 P.3d 1063, decided after Lacey's appeal was final, Lacey argues that his trial counsel provided ineffective assistance by not seeking dismissal of his state charges as "double jeopardy" under § 46-11-504, MCA, the multiple prosecution statute, after he pled guilty in Federal Court. Lacey argues that his case is nearly identical to *Neufeld* and, because the legal principles in *Neufeld* were in place when Lacey's case was brought (both trial and appeal), both his trial and appellate counsel were ineffective for failing to argue those principles.

¶28 "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, *viewed as of the time of counsel's conduct.*" *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066 (emphasis added). An attorney's performance is not assessed based upon subsequent changes in the law. *Hans v. State*, 283 Mont. 379, 402, 942 P.2d 674, 688 (1997) ("[S]ubsequently decided case law cannot be used to judge an attorney's conduct at the time of representation."), *overruled in part on other grounds by Whitlow*, ¶ 18, n. 4; *Foston v. State*, 2010 MT 281, ¶ 12, 358 Mont. 469, 245 P.3d 1103 ("The petitioner cannot rely on subsequently decided

13

case law to render an attorney's conduct ineffective at the time of trial."). Lacey acknowledges these holdings by arguing that *Neufeld* was not some "paradigmatic shift" in this Court's jurisprudence, but rather was based upon legal principles "long established in Montana law." However, we disagree with Lacey's position that they were "long established" at the time of his case.

¶29 First, Lacey's appeal was decided by this Court on March 3, 2009 and *Neufeld* was decided on July 16, 2009. *Neufeld* had not yet been decided when Lacey pled guilty or his suppression issues were affirmed.

¶30 Second, when both Lacey's trial and appellate counsel filed the briefs in his case, this Court's case law did not indicate this Court would find that Lacey was subject to double jeopardy. Montana's multiple prosecution statute provided:

> When conduct constitutes an offense within the jurisdiction of any state or federal court, a prosecution in any jurisdiction is a bar to a subsequent prosecution in this state if: (1) the first prosecution resulted in an acquittal or in a conviction and the subsequent prosecution is based on an offense arising out of the same transaction.

Section 46-11-504(1), MCA. Thus, whether a subsequent prosecution violates a defendant's rights under this statute is determined using a three part test:

> (1) a defendant's conduct constitutes an offense within the jurisdiction of the court where the first prosecution occurred and within the jurisdiction of the court where the subsequent prosecution is pursued; (2) the first prosecution results in an acquittal or a conviction; and (3) the subsequent prosecution is based on an offense arising out of the same transaction.

*State v. Tadewaldt*, 277 Mont. 261, 264, 922 P.2d 463, 465 (1996); *State v. Gazda*, 2003 MT 350, ¶ 12, 318 Mont. 516, 82 P.3d 20. "Due to the conjunctive nature of the statute,

14

all three factors must be met in order to bar subsequent prosecution." *Gazda*, ¶ 12. For the purposes of this appeal, examining the first factor is sufficient to determine that Lacey's counsel did not provide ineffective representation.

¶31 At the time of Lacey's charges, and during Lacey's appeal, *Gazda* and *State v. Cech*, 2007 MT 184, ¶ 17, 338 Mont. 330, 167 P.3d 389, and the authority they relied on, defined concurrent jurisdiction for purposes of this double jeopardy argument. "This Court has explicitly held that jurisdiction exists in both courts when both jurisdictions have authority to prosecute for the same offense." *Gazda*, ¶ 15; *accord State v. Sword*, 229 Mont. 370, 373, 747 P.2d 206, 208 (1987) ("The measure of concurrent jurisdiction is whether defendant's conduct subjected him to prosecution in both jurisdictions."); *Zimmerman*, 175 Mont. at 187, 573 P.2d at 179. "[C]oncurrent jurisdiction fails" where "state and federal courts lack[] authority to prosecute *equivalent offenses based on the same underlying conduct*." *Gazda*, ¶ 14 (citing *Sword*, 229 Mont. at 373, 747 P.2d at 208) (emphasis added).

¶32 The offenses needed to be truly equivalent. In *Sword*, we affirmed the district court's dismissal where the State of Montana had charged the defendant with unlawfully taking a grizzly bear after he had already been charged for the same offense by Federal authorities. *Sword*, 229 Mont. at 376, 747 P.2d at 210. This Court held the two jurisdictions had "concurrent jurisdiction" by nature of the fact that both statutes used "virtually the same language." *Sword*, 229 Mont. at 373-74, 747 P.2d at 208. The *Sword* Court relied on *Zimmerman*, which, similarly, held that the fact that both federal and state

15

authorities had jurisdiction to bring embezzlement charges was a violation of Montana's multiple prosecution provisions. *Zimmerman*, 175 Mont. at 187, 573 P.2d at 179. Conversely, the *Gazda* Court found no double jeopardy. Gazda was charged with deliberate homicide with a weapon in state court and by federal authorities with felon in possession of a weapon and ammunition. *Gazda*, ¶¶ 2-3. Gazda raised the multiple prosecution statute and we held that the first *Tadewaldt* factor was not implicated because "[t]here is no suggestion that the United States could have charged Gazda with deliberate homicide, nor that the state could have charged Gazda with felon in possession, a federal statute with no comparable state statute." *Gazda*, ¶ 15.

¶33 *Cech*, decided months before Lacey filed his appeal, but after his trial counsel had brought her motion, reaffirmed *Gazda*. In *Cech*, the defendant stole a car in Montana and drove it to Washington State. *Cech*, ¶ 4. Montana and Washington charged the defendant with different types of theft and he moved to dismiss his Montana charges claiming double jeopardy. *Cech*, ¶¶ 5-6. We agreed, holding that the underlying conduct gave both jurisdictions authority to prosecute for equivalent offenses of theft and, as such, met the first *Tadewaldt* factor. *Cech*, ¶¶ 17-18. "Cech was not charged with the identical offense in both states, but it was not necessary, for purposes of the first factor, that he was actually charged with identical or equivalent offenses, *only that his conduct at issue constituted an equivalent offense in both jurisdictions*." *Cech*, ¶ 18 (emphasis added).

16

¶34 In sum, when trial and appellate counsel were representing Lacey, this Court had (1) not decided *Neufeld*, and (2) required both jurisdictions be able to prosecute "equivalent offenses" based on the defendant's conduct.

¶35 When Lacey's trial and appellate counsel brought their motions, the charges Lacey faced from the Federal and Montana authorities were not considered "equivalent offenses." In Federal Court, Lacey pled guilty to two counts of Sexual Exploitation of Children under 18 U.S.C. § 2251(a) (2000),[2] which provided:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting [interstate or foreign commerce], with the intent that such minor engage in, any sexually explicit conduct *for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct*, shall be punished . . . [if the person knows or has reason to know the visual depiction will be transported in interstate commerce].

(Emphasis added.) In Montana, Lacey was charged with both Sexual Intercourse Without Consent and Sexual Assault. Section 45-5-503(1), MCA, provides that Sexual Intercourse Without Consent occurs when a person "knowingly has sexual intercourse without consent with another person." "Sexual intercourse," as defined by § 45-2-101(68), MCA, requires actual "penetration of" either the vulva, anus, or mouth. Sexual Assault is when "[a] person . . . knowingly subjects another person to any sexual contact without consent." Section 45-5-502(1), MCA. "Sexual contact" requires "touching of the sexual or other intimate parts of the person of another." Section

---

[2] All United States Code references hereinafter are from the 2000 edition unless otherwise indicated.

45-2-101(67), MCA. Contrasted with the Federal offense of Sexual Exploitation of Children, the Montana statutes for Sexual Intercourse Without Consent and Sexual Assault differ in a significant respect: the Montana charges are physical in nature against another person, requiring "penetration of" or "touching" respectively, while the Federal offense relates to the "purpose of producing any visual depiction" or "transmitting a live physical depiction," and could be committed without actual physical contact.

¶36 Title 18 of the United States Code contains similar offenses to Lacey's state charges, including Aggravated Sexual Abuse in Title 18, Section 2241, and Sexual Abuse in 18 U.S.C. § 2242. However, these offenses include the additional elements of the use of force or fear and, further, may only be charged in "special maritime and territorial jurisdiction of the United States or in a Federal prison." 18 U.S.C. §§ 2241-42.

¶37 Lacey's defense counsel, Ms. Strong, stated:

> [T]he Petitioner's federal convictions for sexual exploitation of children, did not concern the actual assaults and touching incidents, as I understood the underlying facts, but instead, related to his photographing and taking videos of his sexual interaction with the victims, and then, placing such illicit content on his laptop computer, which events occurred at dates and time different from the actual assaults on the victims.

For this reason, Ms. Strong testified that she "decide[d] not to file [a double jeopardy motion to dismiss] because "[s]uch would not qualify for a motion to dismiss under the same transactions and double jeopardy rule." This distinction reflected the jurisprudence in effect at the time.

¶38 Under the state of the law when Lacey's trial and appellate counsel defended Lacey, neither provided ineffective assistance. Rather, given the "strong presumption,"

18

*Whitlow*, ¶ 15 (citing *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065), that counsel acted reasonably, and in light of the case law at the time, it was not unreasonable for counsel to not bring a double jeopardy claim. *Neufeld* was a significant departure from our prior jurisprudence. As outlined above, the statutes at issue here criminalized different conduct: the actual physical action against another person and the production and/or transmitting of a depiction of sexual conduct. *Neufeld* held that they were such "equivalent" offenses, but it was not unreasonable for counsel to think Montana law provided a different outcome before *Neufeld* was decided and, as such, would not meet the first *Tadewaldt* factor. Therefore, neither Lacey's trial or appellate counsel rendered ineffective assistance for failing to bring an argument he faced double jeopardy under § 46-11-504, MCA.

¶39 *2. Did the District Court err by denying Lacey's requests for counsel and an evidentiary hearing?*

¶40 In postconviction proceedings, "[i]f the death sentence has not been imposed and a hearing is required or if the interests of justice require, the court shall order [the appointment of counsel]." Section 46-21-201(2), MCA. Pursuant to § 46-21-201(1)(a), MCA, the district court may dismiss a petition, without a hearing, based solely upon the case record. *Wilkes*, ¶ 35. This Court reviews a district court's decision to hold an evidentiary hearing for abuse of discretion. *Wilkes*, ¶ 9.

¶41 As the above discussion demonstrates, the District Court correctly concluded that Lacey had "faile[ed] to state a claim for relief," § 46-21-201(1)(a), MCA, in his petition, and, as such, did not abuse its discretion in denying Lacey's motion to hold an

19

evidentiary hearing. Further, Lacey was not facing the death penalty and, we conclude that, based on these circumstances, there are no considerations requiring Lacey be appointed counsel in the interests of justice.

¶42    Affirmed.


/S/ JIM RICE


We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER