FILED

06/20/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0189

DA 22-0189

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2023 MT 122N

DANNY LEE WARNER, JR.,

      Petitioner and Appellant,

    v.

STATE OF MONTANA,

      Respondent and Appellee.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DV-21-684(B)
Honorable Robert B. Allison, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Danny Lee Warner, Jr., Self-represented, Lebanon, Ohio

      For Appellee:

      Austin Knudsen, Montana Attorney General, Tammy K Plubell, Assistant
Attorney General, Helena, Montana

      Travis R. Ahner, Flathead County Attorney, Kalispell, Montana

Submitted on Briefs:  May 17, 2023

Decided:  June 20, 2023

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Defendant and Appellant Danny Lee Warner, Jr. (Warner) appeals from the December 16, 2021 Order Denying Petition for Post-Conviction relief issued by the Eleventh Judicial District Court, Flathead County. We affirm.

¶3 In relation to the denial of his petition for postconviction relief, Warner, representing himself pro se, identifies eight issues on appeal:

1) Prosecutorial misconduct of filing false charges, making improper remarks during closing, suborning perjury, and "purposeful intrusion into [] Warner's Attorney-Client privilege";

2) Ineffective assistance of trial counsel (IAC) for failing to investigate and obtain exculpatory evidence, failing to subject the prosecution's case to any adversarial testing whatsoever, and a "total lack of representation";

3) Denial of a defense expert to examine Warner's state of mind and assist in preparation and presentation of his defense at trial and filing of a psychiatric report violating Warner's privilege;

4) Section 46-14-202, MCA, is unconstitutionally vague;

5) District Court bias evidenced by refusing to issue findings and conclusions when required, "refusal to hold Gallagher inquiry" into IAC allegations; denying Warner the right to self-representation, refusing to send exhibits to jury deliberations, and denying Warner "compulsory process";

2

6)      District Court errors of refusing motions, denying the withdrawal of motions, requiring that stand-by counsel initial all documents prior to filing, denying compulsory process, and denying Warner's right to represent himself;

7)      Montana's persistent felony offender (PFO) statutes are unconstitutional; and

8)      Cumulative error.

¶4      Warner was arrested on November 23, 2016, for robbing two men at gunpoint and charged with robbery on November 25, 2016. Warner was arraigned on December 8, 2016. Warner was tried in October 2017 and the jury returned a guilty verdict. Warner then sought a mistrial and dismissal asserting prosecutorial misconduct—namely, that the State listened to private telephone calls between Warner and his investigator while Warner was incarcerated on a pretrial basis. In response, as an officer of the court, the prosecutor advised, "[c]ounsel for the State has never listened to conversation between the Defendant and an attorney or investigator. Counsel for the State has never attempted to listen to a conversation between the Defendant and an attorney or investigator." The District Court denied the motion. Warner was sentenced as a PFO to 50 years at the Montana State Prison, with a 35-year parole restriction. Warner appealed his renewed speedy trial motion which "intermingle[d] arguments alleging ineffective assistance of counsel, discovery violations, oppressive incarceration, involuntary commitment, with alleged speedy trial violations-many of which were made in his first motion to dismiss." *State v. Warner*, No. DA 18-0046, 2020 MT 93N, ¶ 15, 2020 Mont. LEXIS 1161 (*Warner I*).[1]  He also

_____

[1] For a full recitation of the underlying offense and procedural history through appeal see *Warner I*, ¶¶ 2-15.

challenged witness Dustin McGibony's in-court identification; the District Court's refusal to give an eyewitness instruction; argued his psychiatric evaluation at MSH was a privileged communication and its disclosure by MSH and use by the District Court at sentencing was unauthorized; the State's purported use of jail phone calls between Warner and his investigator; the District Court's refusal to send exhibits to the jury; prosecutor misconduct for remarks at sentencing; and cumulative error. This Court addressed these challenges, found no error, and affirmed denial of Warner's request for a new trial or resentencing. *See Warner I*, ¶¶ 18-26. On October 5, 2020, the United States Supreme Court denied Warner's certiorari petition. *Warner v. Montana*, No. 20-5010, 2020 U.S. LEXIS 3998 (Oct. 5, 2020). Warner now attempts to repackage most of his fully adjudicated appeal issues as postconviction relief (PCR) issues.

¶5 We review a district court's denial of a PCR petition to determine whether its findings of fact are clearly erroneous and its conclusions of law are correct. *Wilkes v. State*, 2015 MT 243, ¶ 9, 380 Mont. 388, 355 P.3d 755. IAC claims are mixed questions of law and fact that we review de novo. *Whitlow v. State*, 2008 MT 140, ¶ 9, 343 Mont. 90, 183 P.3d 861. We review discretionary rulings, including rulings on whether to hold an evidentiary hearing, for an abuse of discretion. *Wilkes*, ¶ 9.

¶6 A PCR petition must identify all facts that support the claims for relief. Section 46-21-104(1), MCA; *Kelly v. State*, 2013 MT 21, ¶ 9, 368 Mont. 309, 300 P.3d 120. If the district court determines the petition and the record show the petitioner is not entitled to relief, the district court may dismiss the proceedings without requiring a response or without holding an evidentiary hearing. Section 46-21-201(1)(a), MCA; *see also Lacey v.*

*State*, 2017 MT 18, ¶ 40, 386 Mont. 204, 389 P.3d 233 (citing *Wilkes*, ¶ 35). Consequently, a petitioner seeking to reverse a district court's denial of a PCR petition "bears a heavy burden." *State v. Cobell*, 2004 MT 46, ¶ 14, 320 Mont. 122, 86 P.3d 20 (citation omitted).

¶7　　The State asserts that, except for Warner's IAC claims, all of his PCR claims are procedurally barred as they were either raised or could have been raised on direct appeal. We agree. Section 46-21-105(2), MCA, provides, in pertinent part, that "grounds for relief that were or could reasonably have been raised on direct appeal may not be raised, considered, or decided in a [PCR] proceeding." Warner's PCR claims 1, 3, 4, 5, 6, 7, and 8 delineated above were or could reasonably have been raised on direct appeal and may not now be raised again or anew. What remains are Warner's allegations of IAC.

¶8　　In assessing IAC claims, we apply the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). *Whitlow*, ¶ 10. The first prong of the *Strickland* test requires the defendant show his counsel's performance was deficient. *Whitlow*, ¶ 10. To demonstrate counsel's performance was deficient, the defendant must prove counsel's performance fell below an objective standard of reasonableness. *Whitlow*, ¶ 14. The second prong of the *Strickland* test requires the defendant to prove his counsel's deficient performance prejudiced the defense. *Whitlow*, ¶ 10. To show prejudice, the defendant alleging IAC must demonstrate a reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different. *Stock v. State*, 2014 MT 46, ¶ 19, 374 Mont. 80, 318 P.3d 1053 (citations omitted). If a petitioner fails to prevail on one prong, "there is no need to address the other prong." *Whitlow*, ¶ 11 (citations omitted).

¶9 Courts determine deficient performance based on whether a defendant's counsel acted within the broad "range of competence demanded of attorneys in criminal cases." *Schaff v. State*, 2003 MT 187, ¶ 18, 316 Mont. 453, 73 P.3d 803 (citation omitted). This Court will not speculate, and a silent record fails to rebut the strong presumption counsel performed effectively. *State v. Lewis*, 2007 MT 16, ¶ 21, 335 Mont. 331, 151 P.3d 883 (citation omitted). IAC claims require facts, not merely conclusory allegations. *State v. Wright*, 2001 MT 282, ¶ 31, 307 Mont. 349, 42 P.3d 753; *see also* § 46-21-104, MCA.

¶10 Warner argues his trial counsel, William Managhan, provided ineffective assistance by failing to consult with him on important decisions and keep him informed of important developments in the course of the prosecution, failing to request an investigator until 63 days after Warner's arrest, failing to obtain video surveillance from Starbucks and surrounding businesses after Warner specifically instructed him to do so, and failing to "move for a psychological examination or speedy trial as instructed."

¶11 The State counters that, even if Warner could establish—which the State asserts he could not—that counsel's performance fell below an objective standard of reasonableness, Warner is unable to establish prejudice as required by *Strickland.* Even if Warner could establish—with something more than bald assertions—that Managhan failed to maintain contact with Warner, Managhan was replaced with conflict counsel. Warner then refused to accept services of conflict counsel and represented himself. We agree with the State that Warner has failed to articulate how Managhan's lack of contact—even if established—prejudiced Warner.

¶12     Next, Managhan requested and received approval for an OPD investigator who he requested follow-up on Warner's request to obtain video surveillance from Starbucks and surrounding businesses.  After Warner assumed representation of his own case, he had opportunity to interact with the OPD investigator who explained the actions he had taken to obtain the requested video surveillance.[2]  Warner does not articulate how he was prejudiced by Managhan's actions to obtain video surveillance before he was replaced with conflict counsel, but rather only speculates that had the investigator sought the video surveillance sooner, the outcome of his case would have been different.[3]  Speculation is insufficient to show a prima facie IAC claim.  Finally, prior to Managhan being replaced, Warner filed, pro se, a speedy trial motion which was considered and denied by the District

---

[2] The Red Lion Motel, the Kalispell Regional Mall, and the Art Gallery did not have any video. First Interstate Bank retained video from November 23, 2016, which showed no one walking.  The Bank indicated it would provide the video upon subpoena. In an email of March 28, 2017, Starbucks reported the earliest video available from the subject store was taken February 6, 2017, after the date of the offense charged.  The VFW reported its video completes its loop about every two weeks and as it was not asked to preserve its video for November 23, 2016, it no longer existed—this video would have been over-recorded by the time of Warner's initial appearance. My House was not requested to preserve any video but did report a trespasser to law enforcement and subsequently provided a picture of the trespasser to law enforcement. My House also reported a resident was wearing clothes similar to the alleged robber and that individual was confronted by police that evening.

[3] At trial, the State presented direct evidence from both robbery victims who identified Warner as the perpetrator of the robbery.  Mere speculation that surveillance video taken at night from a distance away may have existed earlier and may have weighed contrary to the victims' testimony, does not establish the time frame in which the defense investigation occurred fell below an objective standard of reasonableness nor does it show a reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different.

Court and preserved for appeal. He also filed a motion for a mental health evaluation which was granted.[4]

¶13 Warner also asserts his appellate counsel was ineffective for failing to raise in his original appeal all of the issues Warner had identified in his list of "Issues Identified for Appeal." Warner fails to articulate what issues were included on his list which were not pursued by counsel on appeal. Appellate counsel, however, identified in an affidavit the specific issues he refused to present on appeal as he believed them to be frivolous—that the District Court erred by sending Warner to the state hospital for evaluation; that Managhan failed to investigate and secure exculpatory video; that Warner's PFO sentence was illegal; and that the State introduced and used perjured testimony. We agree with the State that Warner has failed to provide any analysis as to how appellate counsel's strategic decision to not include claims counsel believed to be frivolous fell below an objective standard of reasonableness—that the unpresented issues "[were] clearly stronger than those presented." *Miller v. State*, 2012 MT 131, ¶ 14, 365 Mont. 264, 280 P.3d 272 (citation omitted). Further, Warner has failed to provide any analysis to show that but for counsel's failure to raise the unpresented claims, he would have prevailed on appeal.

¶14 Based on the record, Warner's claims do not reveal an entitlement to relief, and the Court does not need information beyond the record to address Defendant's claims. Section 46-21-201(1)(a), MCA. The District Court did not abuse its discretion in denying Warner's

---

[4] Both the speedy trial and mental health evaluations were considered in Warner's original appeal. *Warner I*, ¶¶ 16-17, 21.

PCR petition without conducting an evidentiary hearing. *Wilkes*, ¶ 9. Accordingly, Warner failed to meet the "heavy burden" required to reverse the District Court's denial of the PCR petition. *See Cobell*, ¶ 14.

¶15    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶16    Affirmed.

                                        /S/ INGRID GUSTAFSON


We concur:

/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR